HENDERSON, Appellant, v. KOENIG and CITY OF ST. LOUIS.

**In Banc, May 2, 1902.**

1. **Probate Court of St. Louis:** JUDGE: COUNTY OFFICER. The St. Louis scheme and charter, which went into effect in 1876, established the city as a separate territorial division of the State, which is treated as a county. Revised Statutes 1899, section 4160, provides that the word "county," when used in the statutes, shall include such city. Constitution 1875, article 6, section 34, provides that the General Assembly should establish a probate court of record in every county. Act April 9, 1877, sections 1, 13, established a probate court in every county and in the city of St. Louis, and provided that the judge should receive the fees allowed by law for his services. *Held,* that the judge of the probate court of the city of St. Louis is a county officer, within the meaning of Constitution 1875, article 9, section 12, declaring that the General Assembly shall by law uniform in its operation provide for and regulate the fees of all county officers, and for such purpose may classify the county by population.

2. ———: FEES: UNCONSTITUTIONAL STATUTE. The amendment of Revised Statutes 1889, section 3407, providing that probate judges shall receive the fees of their office as compensation, by Laws 1897, page 82, providing that the probate judge in cities having a population of over 300,000 shall receive a salary in lieu of fees, is in violation of Constitution 1875, article 9, section 12, providing that the General Assembly shall by law uniform in its operation provide for and regulate the fees of all county officers, and may for such purpose classify the counties by population, as the later clause only authorizes a regulation of fees according to population, and not an establishment of salaries in lieu thereof.

3. ———: ———: ———: JUDGE OF PROBATE: CHANGE IN COMPENSATION: PARTIAL REPEAL OF GENERAL LAW. Revised Statutes 1889, section 3407, provided that probate judges should receive the fees of their office as compensation. Laws 1897, page 82, repealed and re-enacted this section, with the proviso "that the probate judge in cities having a population of over 300,000," should receive a salary.

The city of St. Louis was the only city in the State entitled to a probate judge, and the only city having such population. Constitution, article 4, section 53, prohibits the General Assembly from enacting any special or local law "by the partial repeal of a general law." *Held,* that the amendment of 1897 was unconstitutional, as amounting to a partial repeal of a general law, though the general law was repealed in toto, and, with the exception of the proviso as stated, was re-enacted in terms.

4. ———: SPECIAL LAW WHERE GENERAL LAW APPLICABLE: UNCONSTI-TUTIONAL. Inasmuch as a general law was applicable, as illustrated by the fact that Revised Statutes 1889, section 3407, had applied to the whole State, including the city of St. Louis, the amendment of 1897 was a violation of Constitution, article 4, section 53, prohibiting the General Assembly from enacting any special or local law where a general law could be made applicable.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

REVERSED AND REMANDED.

*Adiel Sherwood, W. M. Williams, Morton Jourdan* and *W. R. Gentry* for appellant.

(1) The Act or March 20, 1897, offends the organic law, in this, that it is a "local law" "indirectly" enacted "by the partial repeal of a general law." Sec. 53, art. 4, Constitution; State v. Buchardt, 144 Mo. 84; Cooley, Const. Lim. (6 Ed.), 482; State v. Hill, 147 Mo. 68; Holden v. James, 11 Mass. 396; Lewis v. Webb, 3 Me. 326; Wally's Heirs v. Kennedy, 2 Yerg. (Tenn.) 544; Calder v. Bull, 3 Dal. 388; *In re* Picquet, 5 Pick. 65; Durham v. Lewiston, 4 Greenl. (Me.) 140; Budd v. State, 3 Hump. (Tenn.) 483; Officer v. Young, 5 Yerg. (Tenn.) 320; Van Zant v. Waddell, 2 Yerg. (Tenn.) 260; Daly v. State, 13 Lea (Tenn.) 231; Woodward v. Brien, 14 Lea (Tenn.) 523. (2) The act violates section 53, article 4, Constitution, in this, that it is a law local with respect to the city of St. Louis, and special

with respect to the judge of probate in said city. (a) The act, taking from the judge of probate the fees allowed under the general statutes for probate business, is not only applicable, at the present time, solely to the probate judge of the city of St. Louis, but can never, under our Constitution and laws, apply in the future to any other probate court in the State. St. Louis is the only city having a probate court; and there is no provision for such a court in any other city. The act referred to, under its terms, does not include the judge of the probate court of a county, notwithstanding such county may hereafter have a population of three hundred thousand inhabitants or more. It is limited to the probate judge in a city having or that may hereafter have the specified number of inhabitants. The fees for probate business may be just as great, and the number of inhabitants in the territory over which such court has jurisdiction as large, as in the case of the probate court of the city of St. Louis, but the law regulating the one will, under this act, be different from that regulating the other. This enactment for the present and the future must apply to only one judge. Constitution, sec. 20, art. 9. (b) "Statutes which are restricted in their application to one or more counties or cities, with no provision by which those subsequently attaining the specified number of inhabitants might enjoy the benefits or powers conferred by the act, have been held to fall under the prohibition. . . . But, mere form of legislation without regard to its operation will not suffice to relieve it of its special or local character. If in its practical operation it can only apply to particular persons or things of a class, then it will be a special or local law, however carefully its character may be concealed by its form of words." Dunne v. Railroad, 131 Mo. 5; State ex rel. v. County Court, 89 Mo. 237; Rutherford v. Heddens, 82 Mo. 90; State ex rel. v. Hermann, 75 Mo. 340; Ex parte Lucas, 61 S. W. 221; State ex rel. v. Hammar, 42 N. J. L. 435; State ex rel. v. City of Des Moines, 31 L R. A. 186;

State ex rel. v. Somers Point, 52 N. J. L. 32; s. c., 6 L. R. A. 57; School Dist. v. Osborne School District, 6 Pa. Dist. Rep. 211; s. c., 27 Pa. L. J. 440; Sutton v. State, 96 Tenn. (12 Pickle) 696; State v. Hennan, 65 N. H. 103; State v. Pennoyer, 65 N. H. 113; Rudolph v. Wood, 49 N. J. L. 88; Brown v. Haywood, 4 Heisk. (Tenn.) 363; People v. Knopf, 183 Ills. 420; s. c., 57 N. E. Rep. 22; People v. Martin, 178 Ill. 624; State ex inf. v. Borden, 164 Mo. 221; State v. Covington, 29 Ohio St. 102; Devine v. Comrs., 84 Ill. 590; State ex rel. v. Judges, 21 Ohio St. 11; State ex rel. v. Hermann, 75 Mo. 340; People v. Board, 43 N. Y. 21. It can not be doubted that "the amount of compensation to be attached to a local office is a question in its nature local." Cricket v. State, 180 Ohio St. 22; State ex rel. v. Judges, supra. An act which by its terms can apply to but one county in the State, although purporting to be a general law applicable to all counties having a certain population, is special legislation. Devine v. Comrs., supra. A law which purports by its terms to be made for the entire State, but which then proceeds by exceptions and provisos to withdraw from its operation all but one or a few persons of a special class of persons, or all but one of a few cities and counties, is in reality a private or local law, and the courts will so declare. State ex rel. v. Hermann, supra; State v. Mayor, 45 N. J. L. 247; Railroad v. Gregory, 15 Ill. 20; Coutieri v. Mayor, 44 N. J. L. 58; Woodward v. Brien, 14 Lea 520; Topeka v. Gillett, 32 Kas. 431; s. c., 4 Pac. Rep. 800. (c) There must be some reason, growing out of the nature of the regulation, for putting the city of St. Louis in a class by itself. Special acts regulating the practice and proceeding in certain courts in said city and elsewhere, where the same matter could be governed by general laws, have been held invalid. State v. Kring, 74 Mo. 612; State v. Buchardt, supra; State v. Hill, 147 Mo. 63; State v. Thomas, 138 Mo. 95; Ashbrook v. Schaub, 60 S. W. 1085; Campbell's Appeal, 7 L. R. A. 193; Edmunds

v. Herbrandson, 14 L. R. A. 725; Appeal of Ayres, 2 L. R. A. 577; s. c., 122 Pa. St. 266; King v. State, 87 Tenn. 304; s. c., 3 L. R. A. 210. (3) A statute fixing the compensation of an officer in a particular locality upon a basis entirely different from that of all other persons filling like offices in the State, is not a general law, and comes within the constitutional prohibition against special legislation. Gibbs v. Morgan, 39 N. J. Eq. 126; Commonwealth v. McMichael, 8 Pa. Dist. Rep. 157. (4) Section 53, article 11, Constitution, prohibits the passage of a special or local law where a general law "can be made applicable," and makes the determination of this question a judicial question, "any legislative assertion to the contrary notwithstanding." Clearly, a general law could have been made applicable in this instance, and the best proof thereof is that for twenty years we have had a general law, which the Legislature, by the Act of March 20, 1897, have attempted by indirection to partially repeal. State v. Granneman, 132 Mo. 331; Durkee v. Janesville, 28 Wis 471; Shreveport v. Levy, 26 La. Ann. 671; State v. Gritzner, 134 Mo. 529; State v. Walsh, 136 Mo. 407; State v. Higgins, 38 L. R. A. 561; s. c., 51 S. C. 51; Conlin v. San Francisco Supervisors, 33 L. R. A. 752; s. c., 114 Cal. 404; State v. Thomas, 138 Mo. 95. A general law having been once enacted, there can no longer be any question whether a general law can be made applicable, and this is true in cases where the determination of the matter is not vested exclusively in the courts as by our Constitution. State ex rel. v. Supervisors, 25 Wis. 339; State ex rel. v. Riordan, 24 Wis. 484; Walsh v. Dausman, 28 Wis. 541. (5) The judge of probate is a county officer within the meaning of the Constitution and said Constitution requires an uniform rule in laws regulating fees. Sec. 12, art. 9, Constitution. This section excludes any other method of regulation except by classification by population, and any such law (of regulation) must be uniform in its operation. The rule, *Expressio unius exclusio alterius*, applies.

Henderson v. Koenig.

Ex parte Arnold, 128 Mo. 256; State v. Seibert, 123 Mo. 424; Heidelberg v. St. Francois Co., 100 Mo. 75; Suth., Stat. Const., secs. 325, 326, 327, 328; Bishop Stat. Cr. (2 Ed.), sec. 249; Barber v. People, 20 John. 249; Hyde v. State, 52 Miss. 665; State v. Francis, 88 Mo. 557.

*B. Schnurmacher, Chas. Claflin Allen* and *Chas. W. Bates* for respondents.

(1) An act of the Legislature must appear to be unconstitutional beyond a reasonable doubt before the courts will pronounce it invalid on that ground. Every presumption is in favor of its validity. State ex rel. v. Mason, 153 Mo. 23; State ex rel. v. Henderson, 60 S. W. 1093; State ex rel. v. Switzler, 143 Mo. 287; State ex rel. v. Yancy, 123 Mo. 391; Ewing v. Hoblitzelle, 85 Mo. 64. (2) The act in question, which limits and fixes the compensation of probate judges in cities of three hundred thousand inhabitants and over, is not unconstitutional, but is a valid enactment. State ex rel. v. Mason, supra; Kansas City v. Stegmiller, 151 Mo. 189; Spaulding v. Brady, 128 Mo. 653; Kenefick v. St. Louis, 127 Mo. 1; State ex rel. v. Higgins, 125 Mo. 364; State ex rel. v. Yancy, 123 Mo. 391; Ewing v. Hoblitzelle, supra; State ex rel. v. Tolle, 71 Mo. 645; Monahan v. Walton, 69 Mo. 556; Berry v. Shields, 4 Mo. App. 259; Connor v. The Mayor, etc., 5 N. Y. 285.

## In Division Two.

SHERWOOD, P. J.—1. This case had its origin in these circumstances: Section 34, article 6 of the Constitution of 1875, declares that: "The General Assembly shall establish in every county a probate court, which shall be a court of record, and consist of one judge, who shall be elected," etc.; which section concludes with this proviso: "That until the

General Assembly shall provide by law for a uniform system of probate courts, the jurisdiction of probate courts heretofore established shall remain as now provided by law."

Section 35 Ibid, still continues the thought of the uniformity of the organization of such courts.

In 1877, the Legislature (Laws 1877, p. 229) pursuant to the behests of the Constitution as contained in the above sections, established in every county in this State, a probate court and gave such courts uniformity of organization.

Section 1 of the act just cited (which was approved April 9, 1877) provides that: "A probate court, which shall be a court of record, and consist of one judge, is hereby established in the city of St. Louis, and in every county in this State." Thus treating the city of St. Louis as one of the counties of this State. The concluding section of the act repeals all inconsistent acts, and section 13 of the act provides that: "The judge of probate shall receive such fees for his services as now are, or may hereafter be allowed by law for probate business."

The Constitution of 1875 went into effect, according to its terms, on the thirtieth day of November of that year. The scheme and charter affair took effect on the twenty-second day of October, 1876, and the legislative session of 1877 was the first held after the Constitution was adopted, and the first after the scheme and charter materialized; and, consequently, the Act of 1877, aforesaid, must be regarded as a contemporaneous construction of the meaning of section 34; for otherwise, the city of St. Louis, unless treated as one of the *counties* of this State, would have been left without the pale and purview of section 34, and would not have been entitled to *any probate court at all;* but this would have balked the provisions of sections 34 and 35, supra, by preventing the establishment of "a uniform system of probate courts." It was not known of course at the time the Constitution was framed, whether the scheme and charter would be adopted or not, but it would seem that a *modicum of prevision* would have enabled the framers.

of the Constitution to have briefly provided for the contingency
of the scheme and charter's adoption. But as there was no
*pre*vision, so there was no *pro*vision. Since the enactment re-
ferred to, and other similar ones, the city of St. Louis has
been denominated "a territorial division of the State," and
treated as a *county*. [State ex rel. Monahan v. Walton, 69
Mo. l. c. 559, and subseq. cas.]

And in the rules laid down for construction of our stat-
utes, it is declared that "wherever the word 'county' is used
in any law, general in its character to the whole State, the
same shall include the city of St. Louis," etc. [R. S. 1899,
sec. 4160.] This has been the law since 1879.

In Revised Statutes 1879, section 1186 is but a fac simile
of section 13 of the law of 1877, quoted above, as to fees for
the services of the probate judge. The same section continued
the same when it became section 3407 in the revision of 1889.
[R. S. 1889, sec. 3407.]

But the Legislature passed a statute approved March 20,
1897 (Laws 1897, p. 82) which is as follows: "An Act to
repeal section 3407 of the Revised Statutes of 1889, and to
enact in lieu thereof a new section, to be known as section
3407, Revised Statutes of 1889.

"Section 1. That section 3407 of the Revised Statutes
of 1889 be and the same is hereby repealed and the following
new section enacted in lieu thereof, to read as follows:

"Section 3407. [The judge of probate shall receive such
fees for his services as are now or may hereafter be allowed by
law for probate business.] Provided, that in all cities which
now have or may hereafter have a population of three hun-
dred thousand inhabitants or more, the judge of probate shall
receive such compensation as now is or may hereafter be pro-
vided by law to be paid to judges of the circuit courts in
such cities out of the city treasury. Provided further, that
this act shall *not* apply to any judge now in office." This

section is now section 1764, Revised Statutes 1899, and the bracketed words show the section as originally enacted.

Simultaneously with the passage of section 3407, last aforesaid, a statute, approved also on March 20, 1897 (Laws 1897, pp. 82, 83), was enacted, which reads thus:

"An Act providing for the election of an officer to be known as probate clerk in cities now having or which may hereafter have a population of three hundred thousand inhabitants and over, defining his qualifications and duties, and providing for the collection of probate fees and their payment into the treasury of such cities, and authorizing the municipal assembly of such cities to provide by ordinance for the payment of such clerks, and their deputies and assistants, and the orderly transaction of business.

"Sec. 1.    In all cities now having or which may hereafter have a population of three hundred thousand inhabitants and over, there shall be elected at the general election in the year 1898, and every four years thereafter, an officer, to be known as the probate clerk, whose official term shall commence on the first day of January next after election.    Said officer shall, before entering upon the discharge of his duties, make and subscribe an oath before the city register of such cities that he will support the Constitution of the United States and of the State of Missouri, and that he will faithfully discharge all the duties of the office of probate clerk; and shall also execute a bond to the city within which he shall be elected, in the penal sum of ten thousand dollars, with two or more solvent sureties, to be approved by the judge of probate of such cities, conditioned for the faithful performance of the duties of the probate clerk, the collection and accounting for all fees allowed the probate judge or probate court of the city within which he shall have been elected, which oath and bond shall be filed in the office of the register of such cities.    The city or any person injured may maintain suit on said bonds

in like manner as suit may now be maintained on other office bonds.

"Sec. 2.   In addition to the duty now required by law of the clerk of the probate court in such cities, it shall be the duty of such clerk to tax and collect all fees and taxable costs allowed by law to the probate judge and probate court and pay the same weekly into the treasury of such cities.

"Sec. 4.   [3] The municipal assembly in such cities is hereby authorized and empowered to provide by ordinance for the orderly transaction of business between such clerks and the treasurer of such cities, and for the payment of such clerks, deputies and assistants.

"Sec. 5.   [4] All acts and parts of acts inconsistent with this act are hereby repealed."

The defendant C. William Koenig is the probate clerk of the city of St. Louis, elected under the act which has just been quoted.   The plaintiff was elected judge of the probate court of the city of St. Louis, in November, 1898, for a term of four years from the first day of January, 1899; he duly qualified and entered upon the discharge of his duties, and since January 1, 1899, has been the incumbent of that office.

This suit was instituted in the circuit court of the city of St. Louis to test the constitutionality of the act of the Legislature approved March 20, 1897, taking from the judge of said court the fees allowed to probate judges under the general statutes, and requiring the same to be paid into the city treasury, and giving said judge a salary in lieu thereof.

The petition charges that defendant Koenig is collecting the fees allowed by the general statutes to probate judges, and is about to pay the same to the treasurer of the city of St. Louis, under the acts above set out, which plaintiff alleges are unconstitutional and void.   The prayer is that defendant be enjoined from paying such fees into the city treasury, and be

required to account to the plaintiff for and pay the same over to him.

Each of the defendants filed a separate demurrer to the petition based on the ground that it stated no facts, etc. The trial court held that the statutes were valid; sustained the demurrers, and entered final judgment for defendants. From that judgment plaintiff has appealed.

Section 33 of article 6 of the Constitution of 1875, provides that: "The judges of the supreme, appellate and circuit courts, and of all other courts of record receiving a salary, shall, at stated times, receive such compensation for their services as is or may be prescribed by law; but it shall not be increased or diminished during the period for which they were elected."

Section 12 of article 9 of that instrument commands that: "The General Assembly shall, by a law uniform in its operation, provide for and regulate the fees of all county officers, and for this purpose may classify the counties by population."

And section 8 of article 14 of the same declares that: "The compensation or fees of no state, county or municipal officer shall be increased during his term of office. . . ."

Placing these various sections of the Constitution thus in juxtaposition, we find that the salary of the judges of the supreme, appellate and circuit courts, and of all other courts of record receiving a salary, can neither be increased nor diminished during their terms of office. And that the Legislature is commanded to enact a law uniform in its operation where is provided for and regulated the fees of all county officers, and to this end that body is to classify the counties by population. And further, that neither compensation nor fees of a state, county or municipal officer can be increased during his term of office.

These sections thus placed in contiguous contrast, draw a clear line of demarcation between those judicial officers who

receive a *salary* for their compensation, and those who for similar services receive fees.

Salary is defined to be: "A periodical allowance made as compensation to a person for his official or professional services or for his regular work." [Standard Dict.]

Salary is regarded as a per annum compensation. [Bouvier Law Dict.] And to the like effect see an exhaustive review of the subject in People ex rel. v. Myers, 42 Alb. L. J. 332.

The sections prohibit either *increase* or *diminution* in *salary* during duration of the judicial term of office; but where such office is a *non-salaried one,* but compensated by *fees,* they only permit *diminution* of such fees.

Upon this *status* of constitutional regulations arises this question: Is the *judge of probate a county officer?* That a *sheriff* is a county officer has twice been determined by this court. [State ex rel. Holmes v. Dillon, 90 Mo. 229; State ex rel. Bender v. Spencer, 91 Mo. 206.]

In the former case it was said and ruled that the words "state officer," as used in the Constitution, were intended only to refer to such officers whose official duties and functions are co-extensive with the boundaries of the State, and were never intended to include such officers as sheriffs, coroners, county justices, etc., whose functions are confined to their respective counties, and are commonly known and called county officers; and that the Constitution recognizes a clear distinction between state, county and township officers. And it has elsewhere been determined that the judge of a county court is a county officer. [Moore v. State, 5 Sneed, 510; Saffrons v. Ericson, 3 Cold. 1.]

Besides, if the scheme and charter business had never been carried, the probate court would indubitably have remained a county office, and located in a county; and the mere fact that after the Constitution was adopted, the scheme and charter was also adopted, did not in the least tend to alter the

nature, vary the functions, or change the jurisdiction of the probate court, then and theretofore located in the city of St. Louis; it still remained a *county* office, and its judge a county officer.

This was evidently the contemporaneous construction placed upon the sections of the Constitution heretofore cited and quoted by the Legislature which met in 1877, the first session after the Constitution and the scheme and charter had been adopted. They obeyed the Constitution by establishing a probate court in every county in the State, and in the city of St. Louis, and gave that court the commanded uniformity of organization, and, in the concluding section of the act, they paved the way for obeying section 12 of article 9 of the Constitution by enacting that: "The judge of probate shall receive such fees for his services as now are, or may hereafter be allowed by law for probate business."

At the revising session of 1879, the Legislature more fully obeyed section 12 of article 9 of the Constitution, by regulating the fees of probate judges, county judges, clerks of circuit courts, county clerks, common pleas courts, sheriffs, coroners, etc., and proceeded to classify by population the different counties of this State, and to regulate the amount of fees such clerks of courts of record should retain; but these were the only county officers, the amounts of whose fees as allowed to be retained, were thus specified and regulated according to population. [R. S. 1879, sec. 5595, et seq.]

The law thus enacted has continued in force in substance ever since. [R. S. 1889, sec. 4980, et seq.; R. S. 1899, sec. 3236, et seq.]

As just seen, however, the various counties were not classified as to population, as to the fees the various judges of probate were allowed to retain. If the judge of probate is to be regarded as a county officer (and of this there would seem to be no room for doubt), then the Legislature's only proper course of procedure in regard to the fees of judges

of probate was that marked out by section 12 of article 9 of the Constitution, by enacting "a law uniform in its operation," and thus "provide for and regulate" the fees of the judges of probate "and for this purpose classify the counties by population."

The Constitution has pointed out the *precise and specific method* by which county officers are to be paid, which is by *fees;* and if the Legislature desires to classify counties by population and thus proportion the amounts of fees the various judges of probate may retain according to such ratio, then this must be done by appropriate legislative enactments. It can not be done by making one or more judges of probate salaried officers, and compelling them to account for the fees they may receive, and leaving the other judges of probate throughout the whole State unhampered by any such conditions; for this would not be *"a law uniform in its operation,"* and, therefore, not a compliance with section 12 of article 9.

In construing constitutions, the maxim, *"expressio unius est exclusio alterius,"* is equally as applicable as to statutory construction. Indeed, the maxim cited seems to be more rigidly applied and enforced when construing constitutions than when construing statutes, and this because the constitution framers are supposed more carefully to measure their words, than ordinary legislators.

Treating to this subject, THOMPSON, C. J., said: "The expression of one thing in the Constitution, is necessarily the exclusion of things not expressed. This I regard as especially true of constitutional provisions, declaratory in their nature. The remark of Lord BACON, 'that, as exceptions strengthen the force of a general law, so enumeration weakens, as to things not enumerated,' expresses a principle of common law applicable to the Constitution, which is always to be understood in its plain, untechnical sense (Commonwealth v. Clark, 7 W. & S. 127)." [Page v. Allen, 58 Pa. St. 338.]

Vol 168 mo—24.

On the same topic Judge COOLEY observes: "If directions are given respecting the times and modes of proceeding in which a power shall be exercised, there is at least a strong presumption that the people designed it should be exercised in that time and mode only; and we impute to the people a want of due appreciation of the purpose and proper province of such an instrument, when we infer that such directions are given to any other end. Especially when, as has been already said, it is but fair to presume that the people in their Constitution have expressed themselves in careful and measured terms, corresponding with the immense importance of the powers delegated, and with a view to leave as little as possible to implication." [Cooley on Const. Lim. (6 Ed.), pp. 78, 79, 93, 94.]

Discussing the same subject, DENIO, C. J., says with his accustomed force: "But the affirmative prescriptions, and the general arrangements of the Constitution, are far more fruitful of restraints upon the Legislature. Every positive direction contains an implication against anything contrary to it, or which would frustrate or disappoint the purpose of that provision. The frame of the government; the grant of legislative power itself; the organization of the executive authority; the erection of the principal courts of justice, create implied limitations upon the lawmaking authority as strong as though a negative was expressed in each instance." [People v. Draper, 15 N. Y. 544. See to the same point, Bank v. Graham, 147 Mo. loc. cit. 257; State v. Hill, 147 Mo. 63; Ex parte Arnold, 128 Mo. 256.]

For this reason, all that portion of section 3407, aforesaid, contained in the proviso, must be held repugnant to section 12 of article 9 of the Constitution and this ruling, of course, also brings under the ban of the Constitution the act passed on the same day providing for the election of a probate clerk in cities, etc.

2. The next question which propounds itself upon the

record is, whether the Act of March 20, 1897, which takes from the judge of the probate court of the city of St. Louis, such fees as are allowed all over the State to probate judges under the general statutes, and causes such fees to be paid into the city treasury, and provides for paying such judge out of the city treasury, a salary in lieu thereof, violates that portion of section 53, article 4, of the Constitution, which declares: "Nor shall the General Assembly indirectly enact such special or local law by the partial repeal of a general law."

This paragraph or clause of section 53, article 4, is the concluding one of that section which begins by forbidding the General Assembly from passing any local or special law respecting a variety of subjects, enumerating them, and finally adds to its prohibitions a clause (which immediately precedes the one under present consideration), by declaring, "In all other cases where a general law can be made applicable, no local or special law shall be enacted; and whether a general law could have been made applicable in any case is hereby declared a judicial question, and as such shall be judically determined, without regard to any legislative assertion on that subject."

Under the comprehensive provisions last above quoted, no local or special law can be enacted where a general law can be made applicable; and as if fearful of some legislative subterfuge which should evade these wholesome prohibitions, the framers of the Constitution gave additional emphasis and energy to their prohibitive idea by ordaining that paragraph which forms the basis of the present inquiry: "Nor shall the General Assembly *indirectly* enact such special or local law by the partial repeal of a general law." Does the act in question do this?

Section 3407, as it originally stood in the revision of 1889, provided that: "The judge of probate shall receive such fees for his services as now are or may hereafter be allowed by law for probate business." This law as it thus and then

stood applied to *every judge of probate in the State of Missouri*. And if the Legislature, then, without repealing in terms the statute just quoted, had enacted into a law the proviso section 1764 now contains, no one, it seems, could doubt that such additional enactment would have amounted to the partial repeal of a general law, and the consequent enactment of a special or local law. Because, in such cases, the *partial repugnancy* would accomplish the *partial repeal*. [Potter's Dwarr., 113, 155, and cas. cit.; Sutherland Stat. Constr., secs. 137, 138, and cas. cit.]

But the case is in nowise altered by reason of the fact that such repeal was in reality accomplished by the *pretended and formal amendment* by enacting as a part and parcel of section 1764 the proviso aforesaid, which declares the *old law intact save in the city of St. Louis, and save in regard to the then incumbent of the office of judge of probate in that city*. If such legislation as this can be sustained, then there is neither force nor efficacy in the constitutional prohibition which forbids that the Legislature "*indirectly* enact such special or local law by the partial repeal of a general law."

The act in question is *local* as to the city of St. Louis, and *special* as to the incumbent of the office of judge of probate. An elaborate and exhaustive discussion of the subject of local or special laws is had by CORLISS, C. J., of North Dakota, in Edmunds v. Herbrandson, reported in 14 L. R. A. loc. cit. 729, 730. After citing, quoting from and discussing numerous authorities, the chief justice quotes from Davis v. Clark, 106 Pa. 384, where the court said: "It was not then a general act applicable to every part of the commonwealth. It did apply to a great number of counties, but there is no dividing line between a local and a general statute. It must be one or the other. If it apply to the whole State, it is general. If to a part only, it is local. As a legal principle, it is as effectually local when it applies to sixty-five counties out of the sixty-seven as if it applied to one county only. The

exclusion of a single county from the operation of· the act makes it local."

Having made this quotation and citing to the same effect State v. Mullica Twp., 51 N. J. L. 412, the learned judge proceeds: "The case of People v. Newburgh & St. P. Road Co., 86 N. Y. 1, is cited as holding a contrary doctrine. We do not so construe that decision. But we would have no hesitation in declaring that doctrine unsound if it adjudged an act to be not special, so far as the constitutional inhibition against special legislation is concerned, because it related to all· except two counties in the State, where there was no reason for classification. If an act is not special because it relates to all except a single county in a State, without any reason for the classification, then the Legislature can accomplish indirectly what it is beyond their power to bring about by direct steps. Whenever it is desired to introduce a new rule as to a single county, a general law can be passed establishing that rule in all the counties, and then another law can be enacted re-establishing the old rule in all counties except the one singled out to be governed by the new rule. The first law would be clearly general, and, under what it is claimed is the New York doctrine, the second act could not be assailed as special legislation. This would, indeed, be an ingenious mode of neutralizing the constitutional prohibition against special legislation. We would not give it our sanction, however it might be buttressed by authority."

The Legislature in the case at bar would seem to have pursued substantially the same course as that just above indicated. They first pass a general law which declares that, "The judge of probate shall receive such fees for his services as now are or may hereafter be allowed by law for probate business," then, after that law had been in operation for twenty years, it occurred to the Legislature to repeal that section and immediately re-enact it, coupled with a proviso that makes that general law applicable to every probate court in the State,

*except in the city of St. Louis; the only city in the State that can, under the Constitution, have a probate court.* It is true that *as to mere form* this act is not the partial repeal of a general law, but in reality that it is such partial repeal, who can doubt? In such cases courts will look at the true drift, meaning and purpose of the litigated act, and will not permit themselves to be misled or deceived by subterfuging schemes and diaphanous disguises. [Dunne v. Railroad, 131 Mo. loc. cit. 5.]

The mere *form* an act is made to assume will not determine its constitutional character; that will be determined by its *operation.* [State ex rel. v. Herrmann, 75 Mo. 340; State v. Julow, 129 Mo. 163.] And before concluding this paragraph, it is well enough to cite some additional instances apropos previous remarks and citations.

Thus, in California it has been ruled that a statute of that State, relating only to one county therein, was a special law. [Earle v. Board, 55 Cal. 489.]

In People v. Supervisors, 43 N. Y. 10, l. c. 21, it is said: "It must be held, then, from the authorities, also, that an act is local within the meaning of the Constitution, which in its subjects relates but to a portion of the people of the State, or to their property; and may not, either in its subject, operation, or immediate and necessary results, affect the people of the State, or their property in general."

And in Ohio it has been decided that "the amount of compensation to be attached to a local office is a question in its nature local." [Cricket v. State, 18 Ohio St. l. c. 22; State ex rel. Atty.-Gen. v. Judges, 21 Ohio St. l. c. 11.

In Illinois it has been held that: "An act which, by its terms, can apply to but one county in the State, although purporting to be a general law, applicable to all counties having a certain population, is special legislation." [Devine v. Comr's, 84 Ill. 590.]

And a ruling has been made that: A law is local when

instead of relating to and being binding upon all persons, corporations or institutions, to which it may be applicable, within the entire territorial jurisdiction of the lawmaking power, it is limited in its operation to certain districts of such territory or to certain individual persons or corporations. [Kerrigan v. Force, 68 N. Y. 381.]    And an act relating to the fees of a sheriff of a single county has been ruled a local act.    [Gaskin v. Meek, 42 N. Y. 186.]

And where a statute fixes the compensation of an officer in a particular locality upon a basis entirely different from that of all other persons filling like offices in the State, it is held not a general law, but comes within the constitutional prohibition against special legislation.    [Gibbs v. Morgan, 39 N. J. Eq. 126; Commonwealth v. McMichael, 8 Pa. Dist. Rep. 157.]

It should, therefore, be ruled that the act in question is invalid because it is the partial repeal of a general law, and local as well as special.

3.    The next proposition requiring discussion is that involved in that prohibitory provision of the Constitution heretofore quoted that: "In all other cases where a general law can be made applicable, no local or special law shall be enacted; and whether a general law could have been made applicable in any case is hereby declared a judicial question, and as such shall be judicially determined, without regard to any legislative assertion on that subject."    [Sec. 53, art. 4, Const.]

In this instance could a general law have been made applicable?    The Constitution makes the determination of this question a *judicial one*.    But counsel for defendant city admit that a general law could have been made applicable. The admission, however, is wholly superfluous, since it is very plain that such a law could have been made applicable; and the best evidence of this fact is furnished by the general law already quoted, which stood on our statute books for twenty years, relating to every probate judge in the State.    [State

ex rel. v. Supervisors, 25 Wis. 339; State ex rel. v. Riordan, 24 Wis. 484; Walsh v. Dousman, 28 Wis. 541.]

This court has constantly upheld the prohibition of the Constitution now under consideration, and obeying its behests has condemned as local or special all legislation where a general law could have been made applicable. [State v. Granneman, 132 Mo. loc. cit. 331; State v. Gritzner, 134 Mo. loc. cit. 529; State v. Walsh, 136 Mo. loc. cit. 407; State v. Hill, 147 Mo. loc. cit. 67.]

4.   But the assertion is made that cases have been decided by this court where local or special legislation, that is to say, legislation applicable alone to the city of St. Louis, or alone to Kansas City, has been held valid.   This is true, but in the decisions in none of those cases was there any expression or ruling which impinges in the slightest degree on the constitutional prohibition against a local or special law being enacted where a general law could have been made applicable; on the contrary, either distinct or else implied recognition is constantly given to the idea that, owing to the circumstances and exigencies of the *particular case,* a general law could not have been made applicable, or where it could not have been made applicable by reason of the fact that the legislation questioned was the result of direct obedience to some specific command of the Constitution.   This statement will be found to embrace all the cases decided on this subject.   The various decisions on this matter have been very well collated, summarized and analyzed in the briefs of counsel, to which we refer.

In this case, however, there is no command of the Constitution requiring the General Assembly to regulate respecting the compensation to be awarded the judge of probate of the city of St. Louis.   Nor is there any exigency requiring such legislation and confining its operation, as does the act in question, to the city of St. Louis alone.   There are cases where this court has said an act would have been valid applied to St. Louis by *name;* but this court has never said this of an

act where a general law could have been made applicable, but only in cases where it could not. The various commands of the Constitution do not clash with each other. A local or special law can be passed by the Legislature, but this can not be done if the same object can be attained by a general law; and as to whether this can be done, is always a *judicial* question, in investigating which legislative assertion goes for nothing. In other words, and stating the point more briefly, the power to enact a local or special law is altogether *exceptional and conditional;* if the condition exists, to-wit, the inability to make a general law applicable, then the power exists to enact a local or special law. The condition is the basis of the power; absent the condition, absent the power.

The premises considered, we hold the petition sufficient and accordingly reverse the judgment and remand the cause with directions to the lower court to proceed in conformity with the views herein expressed.

All concur.

## In Banc.

The foregoing opinion heretofore delivered in Division Two, is hereby adopted as the opinion of the Court in Banc. *Burgess, C. J., Robinson, Brace, Marshall* and *Gantt, JJ.,* concur; *Valliant, J.,* absent.