WALTER COLLEY, Appellant, v. JASPER COUNTY.—85 S. W. (2d) 57.

Division Two, July 11, 1935.

504

*Chas. F. Newman* and *McReynolds & Flanigan* for appellant.

*C. R. Walden, Dan Nee* and *Howard Gray* for respondent.

COOLEY, C.—Plaintiff, County Superintendent of Public Schools of Jasper County, sued to recover $312.50, claimed to be the unpaid balance of salary due him as such superintendent for the month of July, 1931. He was elected at the regular school election in April, 1931, and assumed his duties on July first following. The case turns on the question of the constitutionality of Section 9464, Revised Statutes 1929 (Mo. Stat. Ann., p. 7258). If that section is valid plaintiff is entitled to recover; if unconstitutional, as defendant contends and as the circuit court held, he has been paid in full and the judgment below for defendant is correct. Defendant in its an-

swer challenged the constitutionality of said statute as being violative of subsections 32 and 33 of Section 53, Article IV, and Section 12, Article IX, of the State Constitution. Said Section 53 prohibits the enactment of "any local or special law" on many enumerated subjects. Said subsections 32 and 33 thereof read:

"(32) . . . In all other cases where a general law can be made applicable, no local or special law shall be enacted; and whether a general law could have been made applicable in any case is hereby declared a judicial question, and as such shall be judicially determined, without regard to any legislative assertion on that subject."

"(33) Nor shall the General Assembly indirectly enact such special or local law by the partial repeal of a general law; but laws repealing local or special acts may be passed."

Said Section 12, Article IX, reads:

"The General Assembly shall, by a law uniform in its operation, provide for and regulate the fees of all county officers, and for this purpose may classify the counties by population."

Prior to 1919 there existed a general statute fixing the salaries of county school superintendent, classifying the counties for that purpose by population and applying to all counties in the State. It fixed such salaries for counties having over 50,000 population at $1500 per annum. It was repealed and a new section, similar except as to amounts of salaries, was enacted in 1919, fixing such salaries in all counties of over 50,000 population, at $2250 per annum. That statute now appears as Section 9463, Revised Statutes 1929 (Mo. Stat. Ann., p. 7257). [Unless otherwise indicated references to the statutes hereinafter will be to the section numbers as appearing in R. S. Mo. 1929.] In 1919 the Legislature enacted a law which was so worded that it could apply to only one county, viz., St. Louis County, and which provided a salary of $4000 for the county school superintendent. Both parties hereto seem to treat that act as having been unconstitutional,—a question with which, however, we need not concern ourselves. In 1929 the Legislature repealed that act and enacted present Section 9464, supra, the validity of which is here involved. It provides that in all counties having at the time of its passage or that may thereafter have a population of more than 100,000 and less than 350,000 the county school superintendent's salary shall be $6000 per annum. It can apply to only four counties in the State, viz., Buchanan, Greene, Jasper and St. Louis counties.

I. Preliminary to consideration of the constitutional question involved we notice appellant's contention that such question is not properly here for review because not timely raised in the circuit

court. The suit was filed September 2, 1931. At the next succeeding term of court and on September 23, 1931, defendant filed a general demurrer to plaintiff's petition which was overruled, and defendant was given leave to answer on or before October 28, 1931. The answer was filed October 31st. No point is made that the answer was filed out of time or without leave of court. In that answer defendant for the first time challenged the constitutionality of the statute upon which plaintiff bases his claim. The *general* demurrer was ineffective to raise the constitutional question, as is conceded. [See State ex rel. Franklin County v. Tibbe Electric Co., 250 Mo. 522, 157 S. W. 635; State ex rel. Schuler v. Nolte, 315 Mo. 84, 285 S. W. 501.] Appellant contends that a constitutional question must be raised at the first opportunity and that by failing to file a demurrer specifically presenting that question the defendant waived it and could not thereafter assert it in his answer. Cases are cited, such as Dubowsky v. Binggeli, 258 Mo. 197, 167 S. W. 999, and State ex rel. v. Nolte, supra, holding that a constitutional question *may* be raised by demurrer if it appears from the plaintiff's petition that his cause of action is founded upon a statute which the defendant claims is unconstitutional. In the Nolte case, 315 Mo. 84, l. c. 90, 285 S. W. l. c. 503 ▮ it is said: "In Missouri . . . it is held that constitutional questions may be raised by demurrer as well as by answer . . . but whatever the mode of pleading it must point out the particular constitutional provision or provisions violated." In no case cited, however, nor in any that we have found, has this court held that the assertion of a constitutional question comes too late when it appears for the first time in the defendant's answer. In the cases cited and relied upon by appellant the question was not raised either by demurrer or answer, when it could have been so presented, but was first raised at some later stage of the proceedings and for that reason was held to have been presented too late.

In Lohmeyer v. St. Louis Cordage Co., 214 Mo. 685, 689-90, 113 S. W. 1108 (cited by both parties), it is stated to be the settled law that a constitutional question "should be lodged in the case at the earliest moment that good pleading and orderly procedure will admit under the circumstances of the given case, otherwise it will be waived." In the instant case, as will appear hereinafter, it required proof of facts not appearing on the face of plaintiff's petition in order to present the grounds on which defendant challenged the constitutionality of the statute and to enable the court to determine that question. Under our practice such proof could not properly have been heard and considered on a demurrer to the petition. "Whatever may be the doctrine elsewhere there is no such thing as a 'speaking demurrer' known to the jurisprudence of this State—

that is, a demurrer that alleges affirmative matter which, taken with the allegations in the petition, shows that no cause of action is stated. . . . In this State a demurrer strikes squarely at the face of the petition and nowhere else.'' [Hubbard v. Slavens, 218 Mo. 598, 622, 117 S. W. 1104, 1111. See, also, Pacific Lime & Gypsum Co. v. Missouri Bridge & Iron Co., 286 Mo. 112, 226 S. W. 853.] Without intimating that a different conclusion might be reached had the determination of the constitutional question required consideration of no facts other than those stated in the petition, it is clear that in this case the defendant, by raising said question in its answer, lodged it in the case as early as good pleading and orderly procedure permitted under the circumstances. It is here for consideration.

II. At the trial below the parties introduced as part of their proof evidence, by reference to the biennial manual known as the Blue Book for 1928-1929, showing, among other statistics, the 1928 vote for presidential electors; this because by Section 9465 it is provided that for the purpose of determining the salary of a county school superintendent the population of the county shall be ascertained by multiplying by three and a half the highest number of votes cast in such county at the last preceding presidential election. By similar reference to the annual report of the State Superintendent of Schools for 1928 (the last report prior to the enactment of present Section 9464), school statistics shown in that report were introduced. We shall, in this opinion, without specific reference, make such use of the data thus presented as may appear necessary. Plaintiff voluntarily took the laboring oar in presenting said data, evidently for the purpose of showing that the classification made by Section 9464 was not arbitrary but based upon sound and logical reasons.

Ascertaining population in the manner prescribed by Section 9465 it appears that Buchanan, Greene, Jasper and St. Louis counties each had, when Section 9464 was enacted, a population of more than 100,000 and less than 350,000, but that Jackson County had more than 350,000, being thus excluded from the operation of said Section 9464. Buchanan and Jackson counties each contains a city of more than 75,000 inhabitants,—St. Joseph in Buchanan County and Kansas City in Jackson County. Those cities, by the provisions of Article 16, Chapter 57, Revised Statutes 1929, have their own school supervision and management and in them the duties and functions of the county superintendent are *nil* or practically so. Jackson County outside of Kansas City had a population, ascertained by the method above mentioned, of over 111,000, while Buchanan County outside of St. Joseph had about 26,000. Buchanan County is included in the operation of Section 9464 so that under said section its county school superintendent gets a salary of $6000 per annum.

while Jackson County, because of the existence within its borders of Kansas City with its large population, is excluded and under Section 9463 its county school superintendent is entitled to only $2250 per annum.

Appellant refers to Section 12 of Article IX of the Constitution as expressly authorizing the General Assembly to classify the counties by population for the purpose of regulating the fees of county officers. Said section gives the Assembly power so to do "by a law uniform in its operation." But we do not understand appellant to contend that such classification may be made arbitrarily when there exists no sound reason or logical distinction to warrant it. Appellant says in his brief:

"It having been made manifest in the forepart of this argument that the Assembly under the constitution had power to classify counties by population for salary fixing purposes, the inquiry arises whether the Assembly, in omitting Jackson County from Section 9464, was actuated by logical considerations or whether the omission was purely arbitrary and unreasonable."

Appellant quotes from State ex inf. Barrett, Atty. Gen., ex rel. Bradshaw, v. Hedrick, 294 Mo. 21, 74, 241 S. W. 402, 420:

"The basis of sound legislative classification is similarity of situation or condition with respect to the feature which renders the law appropriate and applicable. . . . The question is not whether, considering all the circumstances which exist, the Legislature might not constitutionally make a law which would include a larger class. On the contrary, it is whether it appears beyond a reasonable doubt that there are no distinctive circumstances appertaining to the class with respect to which it has legislated which reasonably justify its action in restricting the operation of the law to the persons, objects or places to which the law is made applicable."

Appellant, however, omits (indicating by . . .), part of what the court said. The omitted portion reads: "A law may not include less than all who are similarly situated. If it does, it is special and, therefore, invalid, because it omits a part of those which in the nature of things the reason of the law includes." In the same case, 294 Mo. l. c. 41, 241 S. W. l. c. 407, we find the following, quoted approvingly from Budd v. Hancock, 66 N. J. L. 133, 48 Atl. 1023:

"A law is special in a constitutional sense when, by force of an inherent limitation, it arbitrarily separates some persons, places or things from others upon which but for such limitation it would operate. The test of a special law is the appropriateness of its provisions to the objects that it excludes. It is not, therefore, what a law includes that makes it special, but what it excludes. If nothing be excluded, that should be contained, the law is general. Within this distinction between a special and a general law, the question in

every case is whether any appropriate object is excluded to which the law, but for its limitations, would apply. If the only limitation contained in a law is a legitimate classification of its objects, it is a general law. Hence, if the object of a law have characteristics so distinct as reasonably to form, for the purpose legislated upon, a class by itself, the law is general, notwithstanding it operates upon a single object only; for a law is not general because it operates upon every person in the State, but because every person that can be brought within its predicament becomes subject to its operation. . . ."

In Henderson v. Koenig, 168 Mo. 356, 68 S. W. 72, the court held unconstitutional, as violative of subsections 32 and 33 of Section 53, Article IV of the Constitution, a statute fixing a salary for the probate judge in the City of St. Louis, which by its provisions could apply only to said city. The questions of classification for legislative purposes and of general and special laws are discussed at length. It may not be amiss to quote from that decision, as indicative of the principles upon which laws applicable only to particular localities have sometimes been upheld. The court said, 168 Mo. l. c. 376, 68 S. W. 72:

"But the assertion is made that cases have been decided by this court where local or special legislation, that is to say, legislation applicable alone to the city of St. Louis, or alone to Kansas City, has been held valid. This is true, but in the decisions in none of those cases was there any expression or ruling which impinges in the slightest degree on the constitutional prohibition against a local or special law being enacted where a general law could have been made applicable; on the contrary, either distinct or else implied recognition is constantly given to the idea that, owing to the circumstances and exigencies of the particular case, a general law could not have been made applicable, or where it could not have been made applicable by reason of the fact that the legislation questioned was the result of direct obedience to some specific command of the Constitution. This statement will be found to embrace all the cases decided on this subject."

For comprehensive discussion of the question of classification for legislative purposes see: Henderson v. Koenig, supra; State ex rel. Moseley v. Lee, 319 Mo. 976, 5 S. W. (2d) 83; State ex rel. Garesche v. Roach, 258 Mo. 541, 167 S. W. 1008; State ex inf. Barrett, ex rel. Bradshaw, v. Hedrick, supra.

In the instant case it seems to be in effect conceded that the decisive question, at least *a* decisive question, is whether or not, at the time Section 9464 was enacted, there existed any reasonable grounds for the exclusion of Jackson County from the operation of the act. Appellant suggests several reasons why, he asserts, said county may reasonably have been so excluded.

Appellant says that it appears from the report of the State Superintendent of Schools that in the rural districts Jackson County had fewer teachers and fewer pupils than either of the four counties to which Section 9464 applies. He compiles from said report a table showing the respective number of teachers as: Buchanan County, 586; Greene County, 510; Jasper County, 554; St. Louis County, 938; and Jackson County 386. But in the number of teachers claimed for Buchanan County appellant includes those employed in the city of St. Joseph, who do not come under the county school superintendent's supervision, and who, if we understand said school report, number, as there shown, 472, leaving only 114 for the rural districts of Buchanan County. In the figures given for Jackson County appellant does not include those employed in Kansas City. By a similar erroneous process of compilation appellant arrives at the conclusion that in the rural districts of Jackson County there are fewer pupils than in Buchanan County or either of the other three. He again omits Kansas City in giving the figures for Jackson County but includes St. Joseph in his total for Buchanan County.

Another reason advanced for the omission of Jackson County is that "the number of county certificates issued in Jackson County is less than the number issued in any other of the four counties involved." The tabulation by which this argument is sought to be sustained is made in the same way as that regarding teachers and pupils to which we have just referred. In arriving at the number of certificates for Buchanan County St. Joseph is included while in Jackson County Kansas City is excluded in making the computation. If in both said counties said cities of over 75,000 population are excluded the number of certificates is larger for Jackson than for Buchanan County. By Article 13 of Chapter 57, Revised Statutes 1929, comprising Sections 9470-9480, provision is made for the examination of teachers and the granting of certificates by county school superintendents. But, as stated by appellant, that article, by express statutory provision, Sections 9480, 9544 and 9545, does not apply in cities the size of St. Joseph and Kansas City. Therefore, even though, as appellant says, such facts might make a distinction between the duties of county school superintendents in counties such as Greene, Jasper and St. Louis and the duties of such superintendents in Buchanan and Jackson counties, they can afford no reason for placing Buchanan County in a higher bracket for salary purposes than Jackson County. Appellant further says that by Article 13, supra, "certain duties," (which he does not specify), are imposed upon the county superintendent but that, since by statute said article is not applicable in cities of 75,000 or more population, "here is another difference justifying the Assembly in excluding Jackson County from the statute fixing a salary of $6000 for

superintendents in St. Louis, Buchanan, Greene and Jasper Counties.'' Whether the ''certain duties'' referred to are the holding of examinations and granting of certificates or other duties, since said Article 13 does not apply to St. Joseph any more than to Kansas City we are unable to see and appellant does not attempt to point out how such duties could constitute any reason for placing Buchanan County in a higher salary bracket than Jackson County when the latter has a much larger population outside Kansas City than has the former outside St. Joseph.

Another argument advanced by appellant is that by Sections 9275 and 9343 ''the county superintendent in Jasper County is burdened with certain duties concerning appeals in the matter of formation of new school districts. The statute as to Jackson County (Sec. 9536, R. S. 1929), does not impose those duties on the superintendent of Jackson County.''

Section 9275 is found in the article relating to ''common schools.'' It does place upon the county school superintendent certain duties concerning appeals in the formation of new districts, changing boundaries between districts, etc. Section 9343 makes the provisions of Section 9275 ''relating to the changes of boundary lines of common school districts,'' applicable to ''town, city and consolidated districts.'' Said Section 9343 is found in Article 4 of Chapter 57, relating to ''City, Town and Consolidated Schools.'' It may be observed here that Section 9275 provides that upon the appeal therein provided for being taken the county superintendent shall appoint four other persons who, with himself, shall constitute a board of arbitration to settle the dispute, and provides for payment of a fee to such board for such services. It would seem that the county superintendent's duties in such matters are compensated otherwise than by his salary. Regardless of this, such duties afford no ground for distinction in favor of a higher salary in Buchanan than in Jackson County. Section 9536 is found in Article 16, supra, applying to cities of 75,000 and less than 350,000. It therefore affects St. Joseph and Buchanan County the same as Kansas City and Jackson County. It makes provision for the taking in by such city districts of adjacent territory, and in such proceedings does not provide for an appeal to the county school superintendent. We find a similar section, 9342, in Article 4, relating to City, Town and Consolidated Schools. Without discussing in detail the provisions of said Section 9536 it is sufficient to say that it can afford no reasonable basis for the exclusion of Jackson County from the operation of Section 9464 that would not apply equally to Buchanan County. And we can see no reason and none is suggested why the ''duties concerning appeals in the matter of formation of new school districts'' imposed by Section 9275 do not devolve upon the county superintendent of Jackson

County for that part of the county outside Kansas City as well as upon the superintendent of Buchanan County for the territory outside St. Joseph. As we have pointed out the population outside of a city of more than 75,000 inhabitants is more than four times as large in Jackson County as in Buchanan County. As to all of the alleged reasons referred to above which are advanced for the exclusion of Jackson County from the operation of this law it scarcely requires argument to demonstrate that they would necessarily call with equal or greater force for the exclusion of Buchanan County, with its smaller rural population.

Appellant suggests that "rural school problems are the special province of a county superintendent," citing Section 9462, which requires such superintendent to devote certain time to the study of rural school problems. Again, for the reasons we have pointed out, we can find no ground for the exclusion of Jackson County, the population of which, outside Kansas City, ascertained as provided by Section 9465, is more than four times that of Buchanan County outside St. Joseph, more than the entire population of Jasper County, and nearly as large as the entire population of Greene County.

It is suggested as a distinction between Jackson County and the four counties to which Section 9464 applies that the voters of Kansas City have no voice in the election of the county superintendent. Appellant says that electors in cities of over 75,000 inhabitants do not vote at elections for county superintendents. If such be the fact, we fail to see how it affects the question of what salary such superintendents should receive. But in any event it constitutes no distinction between Jackson and Buchanan counties because each contains a city of over 75,000 inhabitants.

Since the county superintendents in Buchanan and Jackson counties have substantially no duties or responsibilities in school matters within the cities of St. Joseph and Kansas City respectively it is difficult to see how the population of those cities can substantially affect or have logical and substantial relation to the question of the salary that should be paid to such superintendents. If only the population in the parts of those two counties over which the county superintendent's jurisdiction extends and in which he has duties to perform and responsibilities to discharge were considered there would be a number of counties in the State other than those included in Section 9464 in which the population is as great and the duties and labor of the county superintendent as onerous as in either of said two counties or, for example, as in Jasper County. Such other counties along with Jackson are excluded from the operation of Section 9464, while Jasper and Buchanan are included. But we need not pursue this phase of the question. We are unable to find in the matters urged by appellant or in the facts and data submitted by the

514

record any substantial differences in the situation and conditions pertaining to the office of county superintendent of schools in Jackson County as compared with the counties coming within the operation of Section 9464 that could afford a reasonable or sound basis for classifying Jackson County in a lower bracket as regards the county superintendent's salary than the counties included in the act. That is sufficient to condemn the act in question as a special law prohibited by subsections 32 and 33, Section 53, Article IV of the Constitution. And we think it may well be said, also, that in view of the facts and circumstances above mentioned said act is not uniform in its operation. Whether or not a general law could be made applicable is by express provision of the Constitution a judicial question. That it could be we think is clear, as evidenced by the fact that a general law, Section 9463, had been enacted and was in force for many years prior to the passage of Section 9464. See Henderson v. Koenig, supra. That law was in effect partially repealed by the enactment of Section 9464, that is, repealed in effect so far as it applied to the four counties coming under Section 9464. Henderson v. Koenig, supra. Subsection 33, supra, forbids the indirect enactment of a special law by the partial repeal of a general law. It is our opinion and we hold that said Section 9464 is unconstitutional and void. The judgment of the circuit court is affirmed. *Westhues* and *Bohling*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.