## HENDERSON, Appellant, v. C. WILLIAM KOENIG and CITY OF ST. LOUIS.

### In Banc, January 23, 1906.

1. **ASSUMPSIT: When Action Will Lie.** The action of assumpsit will generally lie whenever defendant has received money which in equity and good conscience he ought to pay over to plaintiff. The action, while maintainable at law, is of an equitable character, liberal in form and greatly favored by the courts as a remedy.

2. ——: ——: **Implied Promises to Pay.** Although no express contract may exist between a city and the probate judge thereof, yet if it collects statutory fees pertaining to his office, it does so under an implied promise to account to him for so much thereof as it has received for his use.

3. ——: ——:**Salaries Paid Clerk: Unconstitutional Statute.** The Legislature enacted a law placing the probate judge of St. Louis upon a salary and requiring all the fees pertaining to the office to be turned into the city treasury. That law was held by the Supreme Court to be unconstitutional, but prior to that decision the city, believing the law valid and in reliance upon it, had collected $91,513.33 in fees, and in good faith paid out $42,499.68 to clerks in the probate judge's office, and this last sum he sues for in assumpsit as for money had and received by the city. *Held,* that although the law which authorized the city to collect the fees and pay the clerk's and the judge's salaries out of the money so collected was unconstitutional and the same as if it had never been written, and plaintiff so held from the time he entered upon his duties, yet the law which provided for the election of a clerk and the appointment of assistants by the clerk was also unconstitutional; and as plaintiff made no effort to displace them, or replace them with others of his own appointment, but accepted of their services without advising them that they would not be paid and they with his knowledge and approval rendered the services, the law implied

an agreement on his part to compensate them for the reasonable value of the services rendered; and as the city collected the fees in good faith and paid the clerks in reliance upon the validity of the law, and his office got the benefit of the services of the clerks so paid, and he would have been under obligation to pay them had the city not done so, he cannot recover.

4. ———: ———: ———: ———: **Waiver.** The court will not permit a probate judge to reap all the benefits and rewards resulting to him from the labors of clerks and relieve himself of the burden of reasonably compensating them for the services done. And if the city, in reliance upon the validity of a statute authorizing it to do so, collects the fees pertaining to his office, and in the belief that it was its duty to compensate them for the services rendered, does so, although the Supreme Court subsequently declares the law invalid, and thereby, in consequence, reveals the fact that the duty was on the judge to collect the fees and compensate his clerks out of the money so collected, he will not be heard to ask that he be recompensed for the moneys thus paid to the clerks; but having, without objection or notice, accepted of the services of the clerks, he will be held to have waived any objection to the invalidity or unconstitutionality of the law in so far as it affected their right to their salaries.

5. ———: ———: ———: ———: **Silence: Counterclaim Asserted by City.** The law and justice require something more than a mere passive policy of a probate judge who is receiving the services of clerks and approving of their appointment and work. And where his course has led the city to pay them, in the belief that he was not contesting its right to do so, although the statute under which it did so was invalid, the city will be permitted to set up as a counterclaim the amount paid by it to the clerks, when he comes into court asking that the city be compelled to pay to him the amount it had already paid to the clerks.

6 ———: ———: ———: ———: **Equity and Good Conscience: Tort: Mistake.** Plaintiff's claim to the fees being founded in equity and good conscience, he is required to do equity and allow the salaries which the city paid out for the performance of services upon which alone his claim for fees rests. On the other hand, there was nothing tortious in the conduct of the city or the clerks; they simply made the mistake of thinking it was their duty to obey an invalid statute passed with all the formalities required by the Constitution.

7. ———: ———: ———: ———: **Waiver.** By electing to waive the tort and suing in assumpsit, the plaintiff has ratified the act of the city in receiving and holding the fees for him, and

in the accounting he is chargeable with the fees paid out by the city to the clerks for their services in earning them.

8. ———: **De Facto Officer: Right to Fees.** An officer *de facto* can recover or be allowed the necessary expense of earning fees during his incumbency in derogation of the rightful officer. *A fortiori*, the city can be allowed the amounts paid out by it to the probate judge's clerks in good faith in reliance upon the validity of a statute authorizing it to do so.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher*, Judge.

AFFIRMED.

*W. M. Williams, Morton Jourdan* and *Adiel Sherwood* for appellant.

(1) (a) A void law is no law—*ex nihilo, nihil fit.* Ex parte Nielson, 131 U. S. 182; Strong v. Daniel, 5 Ind. 348; Sumner v. Beeler, 50 Ind. 341; Astrom v. Hammond, 3 McLean (U. S.) 107; Woolsey v. Bank, 6 McLean (U. S.) 142; Detroit v. Martin, 34 Mich. 170; Kelly v. Bemis, 4 Gray 83; Clark v. Miller, 54 N. Y. 528; Meagher v. Storey Co., 5 Nev. 244; Ex parte Rosenblatt, 19 Nev. 439; Ex parte Siebold, 100 U. S. 371; Ex parte Smith, 135 Mo. 223; Cooley Const. Lim. (6 Ed.), 222; Couch v. Kansas City, 127 Mo. 438; Douglas v. Kansas City, 147 Mo. 435. (b) There is no estoppel against any person for or on account of anything had or done in reliance upon a void law. Reinhard v. Min. Co., 107 Mo. 616; Cooley Const. Lim. (6 Ed.), 222; Wood v. Kansas City, 162 Mo. 303; Nichols v. Bank, 55 Mo. App. 81. No one can be estopped by an act which is illegal and void, and an estoppel cannot operate in favor of a party where the law prohibits the doing of an act which is alleged to constitute an estoppel, and where a statement or promise made by an agent of defendant is void in law, plaintiff must be presumed to have known that he had no right to rely upon the same; he cannot invoke the doctrine of estoppel to validate a

promise which the statute declares void.   Nichols v. Bank, 55 Mo. App. 81; Wood v. Kansas City, 162 Mo. 303.   One who accepts employment under a municipality is not estopped to deny the validity of an ordinance purporting to affect his salary.   Wood v. Kansas City, 162 Mo. 303.   (c)   Even if we admit that the evidence in this case with respect to approval by the court of transfers of clerks from one position to another made by the supposed probate clerk, and with respect to the approval by the court of appointments already made by the supposed probate clerk of clerks and assistants, still such acts do not help the city of St. Louis, for they were void, and a void act is wholly incapable of ratification.   MacFarland v. Heim, 127 Mo. 334; Chitty on Contracts (10 Am. Ed.), 731; Craig v. State, 4 Pet. 426; Sprague v. Rooney, 104 Mo. 358; Ullman v. St. Louis Fair Assn., 167 Mo. 284; St. Louis Fair Assn. v. Carmody, 151 Mo. 566; Keim v. Vette, 67 S .W. 226; Williams v. Wall, 60 Mo. 318; Gwinn v. Simes, 61 Mo. 338; Reeves v. Butcher, 31 N. J. L. 224; Gray v. Hook, 4 Comst. 449; Woodworth v. Bennett, 43 N. Y. 273; Bick v. Seal, 45 Mo. App. 480; Thorne v. Ins. Co., 80 Pa. St. 15; Holt v. Greene, 73 Pa. St. 198; Bishop, Stat. Crimes,   sec.   1030;   Donahoe v.  Kelley,  181  Pa. St. 201; 1 Wharton, Conts., sec. 365; Bishop, Conts., secs. 488,  547;  Bishop,  Contracts  (1887),  secs. 471, 488;   Harrison   v.   McCluney,   32   Mo.   App.   481; MacFarland v. Heim, 127 Mo. 327; Handy v. St. Paul Globe Co., 41 Minn. 188; Buchanan v. Hazard, 95 Pa. St. 240; Smith v. Newburgh, 77 N. Y. 130; Board v. Arrighi, 54 Miss. 668; San Diego Water Co. v. San Diego, 59 Cal. 517; Boutelle v. Melindy, 19 N. H. 197; Troewert v. Decker, 31 Wis. 49; Duncan v. McCulloch, 4 S. & R. 483; Clarksville Bridge Case, 6 Pa. L. J. 317; State v. Bank, 45 Mo. 542; State ex rel. v. Hays, 52 Mo. 578; Barton County v. Walser, 47 Mo. 283; People v. Bank, 24 Wend. 431; Bisk v. Seal, 45 Mo. App. 480; Hedges v. Dixon County, 150 U. S. 182; Com'rs of

Shawnee County v. Crater, 2 Kan. 115; Fudicker v. East Riverside Imp. Dist., 109 Cal. 29. (d) Inasmuch as the Act of March 20, 1897, which assumed to authorize the election of defendant Koenig as probate clerk was a nullity, there was no clerk *de facto*, because there was no such office to fill; and ordinance No. 19668 being void, there were no deputies or assistants for defendant Koenig to appoint. Douglas v. Kansas City, 147 Mo. 436; Ex parte Snyder, 64 Mo. 58. (2) (a) No man has the right to pay the creditors of another without his express order or consent and expect reimbursement. Even if the supposed probate clerk, elected under a void law, and his clerks and assistants appointed under a void ordinance, did render services in the office of the probate clerk, still that fact did not authorize the city of St. Louis to use plaintiff's money to pay them for such services without plaintiff's order and consent. Packard v. Lienow, 12 Mass. 11; Merritt v. Am., D. & T. Co., 59 N. Y. Sup'r Ct. 83; Watkins v. Richmond College, 41 Mo. 308; Curtis v. Parks, 55 Cal. 106; Inhab. Mendham v. Losey, 2 N. J. L. 351; Thorp v. Ross, 4 Keyes (N. Y.) 546; Gould v. Village of Phoenix, 3 Thomp. & C. 797; Partage Co. Sup. v. Wampa Co. Sup. 16 Wis. 361; Brown v. Chadwick, 79 Mo. 589; Napton v. Leaton, 71 Mo. 369; Claflin v. McDonough, 33 Mo. 412; Meier v. Meier, 15 Mo. App. 73 (affirmed 88 Mo. 566); Daughady v. Crowell, 11 N. J. Eq. 201; Inhab. South Scituate v. Hanover, 9 Gray (Mass.) 420; Winsor v. Savage, 9 Met. (Mass.) 349; Carter v. Phillips, 49 Mo. App. 322. (b) The city of St. Louis is in the position of having taken plaintiff's money without his order or consent and without authority of law, for the Act of March 20, 1897, being a void law, the old law was in force all of the time; in fact, its force and power were never suspended, and this being true, the act of the city in receiving plaintiff's money from defendant Koenig and in using the same to pay the supposed probate clerk and his assistants was an act prohibited by

law, for under the old law, which was never suspended, plaintiff was entitled to appoint his own clerk and assistants and fix their compensation and make payments to them from time to time in his own name and in pursuance of his own contracts made with them. The city of St. Louis, therefore, violated the law every time it received any money from defendant Koenig, and every time it paid out any money to defendant Koenig and his deputies and assistants. The money belonged to plaintiff, and he was entitled to receive and disburse it. Whenever an act is expressly or impliedly prohibited by statute, it is illegal and void, and any party affected thereby may take advantage thereof. Welsh v. Brewing Co., 47 Mo. App. 608; Ehrhardt v. Robertson, 78 Mo. App. 411; Gwinn v. Simes, 61 Mo. 338; Woolfolk v. Duncan, 80 Mo. App. 427; Petrel Guano Co. v. Jarnette, 25 Fed. 675; Bartlett v. Vinor, Carth. 251; Beans v. Robertson, 64 Miss. 195; Atwood v. Fisk, 101 Mass. 364; King v. Winants (71 N. C. 469), 73 N. C. 565. (3) (a) The city of St. Louis cannot recover upon its counterclaim or set-off—that portion of the answer is demurrable. In every declaration for money paid to the use of another, it must be alleged that it was paid at his request; in short, an express promise of repayment must be alleged unless the party paying the money was under a legal obligation to pay it for the other party and was forced to pay it, in which case the law would raise an implied promise of repayment, the facts showing which must, of course, be alleged; and in any event a consideration for the promise to repay must be stated, and facts showing that the party promising did so with full knowledge of all material facts. And it must be alleged that payment was made not only for the defendant's benefit, but by his authority, for if the money was paid against the protest of the party for whose use it is claimed to have been paid, it cannot be recovered—this is true whether payment was made under mistake of fact or mistake of

law where both parties had the same means of information. Where a party has a legal right, it is not necessary that he shall bring an action or suit or take any active step to prevent interference therewith. It is enough for him to show that he has in a reasonable way informed the other party that he does not submit thereto and legal proceedings to protect his rights destroy any claim of acquiescence, for acquiescence means active assent. Wolfe v. Marshall, 52 Mo. 167; Buchanan v. Sahlein, 9 Mo. App. 552; Alcinbrook v. Hall, 2 Wilson 309; Tappin v. Broster, 1 Car. & P. 112; Stokes v. Lewis, 1 T. R. 20; Butcher v. Andrews, Carth. 446; Sleigh v. Sleigh, 5 Exch. 514 (5 Wel. H. & G.); Hecht v. Bachelor, 147 Mass. 335; Carter v. Boehm, 3 Burr. 1910; Scott v. Jackson, 89 Cal. 262; Kent v. Quicksilver Min. Co., 78 N. Y. 159; Rabe v. Dunlap, 57 N. J. Eq. 48; Glover v. Coleman, L. R. 10 C. P. 119; Bennison v. Cartwright, 5 B. & S. 1 (117 E. C. L. 1); Lux v. Haggin, 69 Cal. 255; Rochdale Canal Co. v. King, 2 Simons (U. S.) 78; DeBussche v. Alt, 8 Chan. Div. (47 L. J. Ch. 381; 38 L. T. 370). (b) Under the authorities, no ratification of the disbursement of plaintiff's money by the city of St. Louis is shown. Fenn v. Harrison, 3 T. R. 757; Sanderson v. Griffiths, 5 B. & C. 913; Vere v. Ashby, 10 A. & C. 298; Collins v. Swan, 7 Robt. (N. Y.) 633; Fellows v. Comrs., 36 Barb. (N. Y.) 655; Wilson v. Tumman, 6 Man. & G. 236; Hamlin v. Sears, 82 N. Y. 331; Workman v. Wright, 33 Ohio St. 405; Beveridge v. Rawson, 51 Ill. 504; Brook v. Hook, 24 L. T. 234; Roby v. Cossett, 78 Ill. 638; Ludlow v. Hardy, 38 Mich. 690; Thorndike v. Godfrey, 3 Green (Me.) 429; Owings v. Hull, 9 Pet. 629; Copeland v. Ins. Co., 6 Pick. (Mass.) 198; Hays v. Stone, 7 Hill (N. Y.) 128; Walker v. Henley, 36 W. Va. 100; Chamberlin v. Whitford, 102 Mass. 448; Dearborn v. Bowman, 3 Metc. (Mass.) 155; McGildery v. Capin, 7 Gray 525; Mills v. Wyman, 3 Pick. 207; Bartholomew v. Jackson, 20 Johns. (N. Y.) 28; Allen v. Bryson, 67 Iowa 591; Ossier v. Hobbs, 33 Ark.

215; Ellicott v. Peterson, 4 Md. 476; Queen City F. & C. v. Crawford, 128 Mo. 364; Combs v. Scott, 12 Allen (Mass.) 496.

*Chas. W. Bates* and *Wm. F. Woerner* for respondent City of St. Louis.

(1) The appellant's acts amount to a waiver of his right to assert the unconstitutionality of the enactment providing for payment of the clerks and men. (a) A person, with respect to his own affairs, may waive or renounce a constitutional right by taking or assenting to a position inconsistent therewith. Cooley on Const. Lim. (7 Ed.), pp. 250-251; Ferguson v. Landram, 5 Bush (Ky.) 235; Barnett v. Barbour, 1 Litt. (Ky.) 398; s. c. sub. nom. Hansford v. Barbour, 3 A. K. Marsh. (Ky.) 516; Baker v. Braman, 6 Hill (N. Y.) 47; Dodd v. Thomas, 69 Mo. 370; State v. Wagner, 78 Mo. 648; Merrill v. St. Louis, 83 Mo. 251; Vaughn v. Scade, 30 Mo. 604; Daniels v. Tearney, 102 U. S. 421; Lee v. Tillotson, 24 Wend. (N. Y.) 339; Williams v. Railroad, 153 Mo. 519. (b) A waiver is the intentional relinquishment of a known right. In order to constitute a waiver it is not necessary that there be any agreement to that effect, nor a consideration, nor even that the defendant knew of the waiver. Evidence not sufficient to establish a technical estoppel may be sufficient to establish a waiver. It depends altogether on the nature of the matter to which the waiver pertains. Fulkerson v. Lynn, 64 Mo. App. 653; Loan Assn. v. Trust Co., 73 Mo. App. 166; West v. Platt, 127 Mass. 373; Trust Co. v. Ins. Co., 79 Mo. App. 366. (c) The subsequent assent of appellant was equivalent to a prior request to pay the men; and "it is not in all cases necessary for the plaintiff to prove an express assent to enable the jury to find a previous request; and sometimes the jury will be warranted (as in this case the court) in inferring a previous request, even contrary to the actual fact, on

the ground of legal obligation alone." Allen v. Richmond College, 41 Mo. 308. (d) The arrangement or understanding that appellant should attack only the salary statute and, pending the suit, to leave unassailed the ordinance providing for the clerical force was tantamount to an agreement that the whole ordinance should during that period be accepted, which included the payment of the men, and thus operates as a waiver of its invalidity on that point. (2) (a) The appellant's acts, in accepting and appropriating the fruits and benefits of the statute and ordinance in question, estop him from setting up its unconstitutionality so as to escape the corresponding burdens. "In such cases the principle of estoppel applies with full force and conclusive effect." Daniels v. Tearney, 102 U. S. 421; St. Louis v. Davidson, 102 Mo. 149; Ferguson v. Landram, 5 Bush (Ky.) 230; Vickery v. Board, 134 Ind. 556; Purcell v. Conrad, 84 Va. 573; Barnett v. Barbour, 1 Litt. (Ky.) 398; Van Hook v. Whitlock, 26 Wend. (N. Y.) 43; Andrus v. Board, 41 La. Ann. 700; Willis v. Board, 86 Fed. (C. C. A.) 876. (b) Having dealt with the statute as valid, appellant is now precluded from being heard against it, and is subject to its obligations. Mississippi Co. v. Jackson, 51 Mo. 25; State ex rel. v. Mastin, 103 Mo. 512; Dodd v. Thomas, 69 Mo. 370; People v. Bunker, 70 Cal. 212; Cooley on Const'l. Lim. (7 Ed.), pp. 250-251. (3) Appellant has ratified the payments. Even if the enactment be treated as void for all purposes he cannot recover. The ordinance being laid out of consideration and treated as if it had never existed, as appellant insists it should be, then the clerical forces, if lawfully there at all, must have been there by reason of appellant's own appointment, for no one else was authorized or able to put them there except for him and with his consent and ratification. That they were there lawfully cannot be questioned, because appellant is now in court demanding the fees accruing through their official actions; otherwise he cuts the

ground from under his own feet and says there are no lawful fees coming to him. The men being there, then, only by reason of appellant's consent, but having been put there by the city in the first place, it follows that the appellant made valid and ratified, as performed for his benefit and by his agent, all the acts of the city and the clerk, as if under authority emanating from him. And since he could not ratify such part as benefited him and repudiate the rest, it follows that he ratified the payments as well as the receipts of funds connected with the office. He cannot recognize the agency so far as furnishing to him the men doing the work, without also recognizing it for the purpose of paying the men for doing the work. (a) The appellant seeks to hold the defendant city as a trustee in its own wrong, for having collected wrongfully and unlawfully, but in good faith, the fees belonging to him and claimed in this proceeding. In such case he must state the account on equitable principles and, claiming the benefits, must allow the corresponding expenditures. If one side of the account is cut out the other must go also, and vice versa. Langston v. Canterbury, 173 Mo. 135; Merritt v. Merritt, 62 Mo. 157; Mayfield v. Moore, 53 Ill. 433. (b) A ratification is no new contract and therefore requires no new consideration; it is simply adopting what has been done in another's name, accepting or acknowledging the benefits, and assuming the burdens. State ex rel. v. Milling Co., 156 Mo. 634. One who would avail himself of the advantages arising from the act of another ratified by him as being in his behalf though done without prior authorization, must also assume the responsibilities. He must either accept them or reject them as a whole, and cannot reject the burdens while taking the benefits. State ex rel. v. Harrington, 100 Mo. 175; Dry Goods Co. v. Bank, 81 Mo. App. 51; Ruggles v. Washington Co., 3 Mo. 500; Porter v. Woods, 138 Mo. 552; Norton v. Bull, 43 Mo. 113; Watson v. Bigelow, 47 Mo. 413; Benevolent Soc. v. Murray, 145

Mo. 622; Barnett v. Stewart, 158 Mo. 181; Nalle v. Thompson, 173 Mo. 616. (c) Plaintiff cannot repudiate the validity of the city's acts so far as the appointment and payment for him of the clerical force is concerned, and assert that they were not there either *de jure* or *de facto,* without destroying the very existence of his claim to the fees resulting from their being such, which is the subject-matter in issue. No clerks, no fees; no fees, no case. "In other words, plaintiff's position on this point, if successful, would cause the bottom to drop out of his cause of action," because the city would have no money derived from fees belonging to plaintiff. Roe v. Bank, 167 Mo. 424.

GANTT, J.—The original petition in this case was a suit in equity to prevent the defendant Koenig from collecting and paying into the treasury of the city of St. Louis fees allowed by statute to the probate judge for the transaction of probate business in the city of St. Louis, and to prevent the city of St. Louis from receiving such moneys, on the ground that the Act of March 20, 1897, providing that the judge of said probate court of the city of St. Louis should thereafter receive a salary instead of the fees allowed by the statute, was unconstitutional and void. To that bill a demurrer was interposed in the circuit court of St. Louis which was sustained by the circuit court, and the plaintiff refusing to plead further final judgment was rendered in behalf of the defendants, Koenig and the city of St. Louis, and thereupon an appeal was taken to this court by the plaintiff, and the judgment of the lower court was reversed and the cause remanded with instructions to proceed in accordance with the opinion of this court. The opinion in that case was reported in 168 Mo. 356.

After the cause was remanded to the circuit court, the plaintiff filed an amended petition, by which the action was changed to one at law for money had and received by the city for the sum of $42,449.68 with in-

terest at the rate of six per cent from May 19, 1902, and also for interest upon each sum of money paid by Koenig into the city treasury from the date of each payment, to May 19, 1902, the city in the meantime having paid the plaintiff the sum of $42,013.65 on account of sums due him for fees collected by the defendant Koenig and paid into the city treasury. The city of St. Louis in its answer admitted that the city was liable to account to plaintiff for fees collected by it in the sum of $91,513.33, but alleged that it was entitled to retain and counterclaim the sum of $42,499.68 paid by it for salaries for the clerk and deputies and assistants of the plaintiff during the period for which it was accountable for fees received by it. In the second count of the answer it was alleged that said fees were paid into the city treasury by the defendant Koenig and accepted by the city in reliance, in good faith, upon the validity of sections 6244, 6245, 6246 and 1764, Revised Statutes 1899, which provided a salary as compensation for the plaintiff and took away his fees and provided for the election of the clerk of the probate court, and that the city of St. Louis, relying upon section 6246, Revised Statutes 1899, and the Municipal Assembly, also relying upon the validity of the section aforesaid, enacted an ordinance known as sections 1248 and 1249 of the Municipal Code of St. Louis, providing for the salaries of the clerk of the probate court and the deputies, and believing that said statutes and the ordinance aforesaid were valid, the city was required to pay out in salaries as set forth in an exhibit "A" the sum of $42,499.68 before the said statutes were held to be void by the Supreme Court, and after full arguments and mature deliberation had been declared valid by the circuit court and while an appeal by the plaintiff to the Supreme Court without bond was pending. It was further alleged in the answer that the orderly administration of justice and public necessities required the city to pay the salaries aforesaid. It is further alleged

that, had such statutes been known or believed to be unconstitutional by plaintiff or defendant, plaintiff would have been required to appoint a clerk, deputy clerks and assistants, and to pay them a reasonable value for their services out of his funds, or out of the fees to which he was entitled and which were collected by defendant Koenig and paid into the city treasury, and that the clerk, deputies and assistants so required would have been the same in number as provided for in said statutes and ordinance, and the reasonable value of their services, which plaintiff would have been required to pay, is the same as provided for in said ordinance and which was in fact paid; and by reason of these facts the salaries paid by defendant city, as shown in exhibit "A," inured directly to the benefit and advantage of plaintiff and was paid on his account, and the defendant city should be and is in equity and good conscience entitled to credit therefor as against him. It is further alleged that the clerk, deputies and assistants, whose salaries were paid as aforesaid, acted and performed the respective duties of their office for and in behalf of plaintiff as the judge of the probate court ever since he took the office, and plaintiff himself was so uncertain and doubtful as to the validity of said statutes and the ordinance that he at times deliberately and intentionally accepted, ratified, approved and sanctioned all their acts as being within the scope of their authority, and that plaintiff never objected to their acting as such, or requested any of them to discontinue their services; nor did plaintiff make any attempt to make any different payments; but, on the contrary, was consulted and did approve the payments of those acting and paid as aforesaid. It is then alleged that plaintiff is in law and good conscience estopped from claiming as part of the amount due him the amounts so paid for salaries as aforesaid.

The reply filed by plaintiff consists, first, of a general denial, and then of a plea, in which it is alleged by

the plaintiff that the fees collected by the city, which
belonged to plaintiff and should have been paid to him
by defendant Koenig, were against plaintiff's will and
protest so collected and paid into the city treasury
from time to time, and that such collection and payment
took place under and by virtue of a certain ordi-
nance which purports to have been duly enacted
by the Municipal Assembly, and approved by the
mayor, and the ordinance is set out in full; it
is then alleged that everything had and done by
the city of St. Louis and defendant Koenig in
and about the collection of fees due and payable for the
transaction of the probate business by the probate court
or the probate judge, which in justice and of right be-
longed to plaintiff and should have been paid to him;
was had and done by defendants under and by virtue
of the terms and provisions of the ordinance set forth
at length, and that defendants had no further authority
or right to act in the premises save and except the pre-
tended right and authority which they pretended and
assumed to exercise under said ordinance.

At the trial of the cause it was admitted that the
plaintiff was elected judge of the probate court of the
city of St. Louis at the November election in 1898, and
afterwards qualified and performed the duties of his po-
sition from January 1, 1899, for the four years next
following.   It was also admitted that up to April 28,
1902, the sum of $91,533.33 of public fees earned by the
probate court and judge of St. Louis after January 1,
1899, were paid into the city treasury by the defendant
Koenig, acting as clerk of the probate court at the dates
and in the amounts shown in exhibit ''A'' attached to
the city's answer.   It was also admitted that on May
19, 1902, the plaintiff was paid by the city the sum of
$49,013.65 and that said payment took place under a
stipulation signed by the parties by which it was agreed
that the city of St. Louis was indebted to the plaintiff
in the said sum of $49,013.65, the sum being the differ-

ence between the amount of probate fees received by
the city and the amounts paid out by the city in salaries
for clerk and deputies in said office, and that the total
amount of salaries so paid was $42,499.68, which
amount the defendant and city of St. Louis claimed a
right to retain, and the plaintiff a right to demand, the
entire amount collected by the city, and in order to nar-
row the issue in dispute so as to confine them to those
matters in actual dispute and in order to avoid the pay-
ment of interest upon withheld money, the city of St.
Louis prayed the court to make the order directing it
to pay to the plaintiff the sum of $49,013.65 to be paid
by the city and received by the plaintiff without pre-
judice to the rights of either party with respect to the
payment of salaries as aforesaid or any other claim or
demand. The plaintiff consented that such order might
be made for the payment of said sum without prejudice
to his rights to prosecute his suit or any other suit for
the remainder of fees claimed by him for interest or
any other demand, the same being merely a payment
on account. It was also admitted that ordinance 19668
enacted by the Municipal Assembly of the city of St.
Louis and approved January 20, 1899, required the
clerk of the probate court to deposit his collections of
all fees and taxable costs in a bank or trust company of
the city of St. Louis, and on each Monday of each week
to render to the city treasurer a statement in writing
of said total collections on account of costs taxed by
said probate court or judge for the week preceding and
transmit to the treasurer his check as probate clerk for
the amount of said statement. And that by said ordi-
nance annual salaries were provided for the city clerk
and his deputies and assistants.

On the part of the defendant, Koenig testified that
he was a candidate for clerk of the probate court under
the Act of March 20, 1897, at the general election in
November, 1898, and was elected and qualified and held
the office on the theory that the statute was valid; that

Judge Rassieur's term as probate judge expired on December 31, 1898, and that on the last day of his term, Koenig submitted to him a list of names of deputies which he had appointed and asked him as the court to approve the same, which he did; that when Judge Henderson assumed the duties of the office, he did not remember that Judge Henderson said or did anything in reference to said clerks after coming on the bench; that Judge Henderson transacted the duties of his office as probate judge and passed the papers to the defendant Koenig, such as settlements, etc., for the purpose of having them entered on the records of the court; that Koenig made a minute of the action taken by the court and then passed the papers to the deputy clerk, Mr. Gutting, who wrote up the records and after these records were written they were signed by Judge Henderson; that these clerks and deputies continued to act as clerks through Judge Henderson's term; that Koenig himself and none of the other deputies were requested to retire from the office by Judge Henderson, but did the work of the office with the knowledge and acquiescence of Judge Henderson although Judge Henderson did claim that the act giving him a salary was unconstitutional, and he was entitled to the fees of the office. The defendants offered in evidence the record of the probate court showing the approval of the appointment of August Carle as stenographer and typewriter of date January 21, 1899. And the record dated in April, 1899, showing the appointment of said Carle as will copyist and assistant clerk in place of J. F. Young, resigned. Defendant also offered an entry of record showing the approval of the appointment of Henry F. Bohn as typewriter and copyist in place of August Carle, resigned, of date April 18, 1899. Defendants also offered in evidence a record entry of June 1, 1900, showing the appointment of John D. DeGarno as typewriter and copyist in the place of H. F. Bohn, resigned, also

192 sup—45

an entry of February 1, 1901, showing the approval of the appointment of Lewis Huber as will copyist in place of H. F. Bohn, resigned, and also an entry of record approving the appointment by the court of Matthew Tenman as custodian of the files in place of Lewis Huber, resigned. Witness further testified that these men acted under their appointments until they resigned; that none of them were removed by the plaintiff. Defendants offered in evidence the petition prepared by the clerk asking the court to approve the appointment of H. F. Bohn and a similar paper in each instance prepared by the clerk for the appointment of deputies asking for approval. He further testified that the city of St. Louis paid all of these clerks from the beginning of Judge Henderson's term up to April 1, 1902, and that Judge Henderson paid the wages of these clerks from that date, but in several instances reduced the salaries of the said deputies and clerks. Witness testified that he assumed to act as clerk after his election under the Act of March 20, 1897, and made the appointments referred to, assuming to act under the ordinance of the city of St. Louis in the belief that said act and ordinance were valid. Witness further testified that in his opinion the salaries and number of men fixed and specified in the city ordinance were reasonable and that the business in the clerk's office had been increasing for the past four years about fifteen or twenty per cent over the amount of work done during Judge Rassieur's term; that "I did not understand that the judge was attacking the constitutionality of the act under which witness was elected clerk, though I did understand that he was claiming the act under which he was to receive a salary was unconstitutional."

John W. Gutting testified that he had been a deputy clerk in the probate clerk office since 1868; that his duty was to write up the records of the court; that when Judge Henderson first assumed the duties of judge of said court no changes were made in the cler-

ical force to his knowledge except that Koenig employ-
ed Carle in addition to other clerks that were there;
that witness just simply continued to stay there as did
all other deputies; that Judge Henderson did not say
anything to him prior to the time the decision of the
Supreme Court was handed down about his position;
that witness continued to write up the record of the
court just as before; that Judge Henderson knew that
he was writing up the records right along and from time
to time witness would consult him when he was in doubt
as to what the order had been and the judge would direct
him what to write whenever he asked him about it; that
after the records were written up by himself Judge Hen-
derson would sign the same as judge of the court. This
witness testified that the compensation which he re-
ceived for his services was less than what they reason-
ably were worth, and that the salaries fixed by the ordi-
nance in his opinion were not sufficient.

An itemized statement of the disbursements made
by the city of St. Louis for clerical hire in the office of
the probate court, marked exhibit "A" and filed by the
city with its answer, was admitted to be correct, and
also an itemized statement of the fees collected by C.
William Koenig and turned over to the city of St. Louis,
was admitted to be correct, the total aggregating $91,-
513.33, and the total disbursements amounted to $42,-
499.68.

In rebuttal Judge Henderson testified in his own
behalf that at no time during his incumbency of the
office of probate judge did he consent to the payment of
the fees of probate judge into the city treasury. That
as early as January 24, 1899, he commenced a suit
against Koenig and the city of St. Louis to enjoin them
from collecting his fees. This was before any money
was paid into the city or paid out by the city. In regard
to the service of clerks and deputies and their continu-
ance in office, he testified that "they wrote up the re-
cords and I signed them, but as far as consenting or

recognizing their right to usurp the offices that belong-
ed to me, I did nothing. I appreciated the fact that I
had no power to remove them or to get them out and I
was informed by Mr. Koenig, and of course I knew as
a matter of fact, that as soon as the payment quit, that
is, when the clerks did not get paid, they would get out,
there was nothing else I could do.'' After the Supreme
Court decided the act unconstitutional he made no
change in the personnel of the clerks and deputies ex-
cept to discharge one man; when he came into the office
he found the clerical force in operation and he said noth-
ing to them about being there unlawfully; that they
went right along doing their work in the office to his
knowledge; that when he was presiding on the bench
and an order was requested he would make or refuse it
and pass it over with his minute on it to Mr. Koenig
to take its regular course so that it would go upon the
record; that he acted as judge and Koenig acted as
clerk, the latter wrote up the records and he signed
them; that the clerks did all the work that was required
of them to do, and he knew they were doing it; he never
requested any man to leave the office so that he could
put someone else in his place; he never tried to put
them out. And as far as the clerks and deputies were
concerned, they did the work just the same as if he had
appointed them, and after his right to the fees had
been decided in his favor he continued them in their re-
spective positions. There was no dispute between him
and the clerks doing the business; that he knew about
the amount that was being paid into the city treasury
by the clerk. ''The records show that I aproved the ap-
pointment of certain clerks. It was some time after the
city had been paying the clerks that the matter was pre-
sented to me judicially; I presume I was passing on it
judicially. It was immaterial to me if I could not get
my own clerks whether their names were August Carle
or John Smith.'' Plaintiff also introduced in evidence
the original petition for injunction brought to the Feb-

ruary term, 1899, against Koenig and the city of St. Louis.

This was substantially all the evidence necessary to the understanding of the propositions of law discussed by counsel and which are before us for decision at this time.

I. This is an action of assumpsit for the money had and received by the city to the use of the plaintiff. It is clear that, in the first instance, the defendant city did not make any express contract of agreement with the plaintiff to collect and hold these fees and account to him for the same, but the liability of the city is bottomed upon the implied promise of the city to pay him the moneys which in equity and good conscience it has received for his use. This action will lie in general whenever the defendant has received money which in equity and good conscience he ought to pay over to the plaintiff. [Cary v. Curtis, 3 How. (U. S.) 246; Winningham v. Fancher, 52 Mo. App. 458; 2 Ency. Pl. and Pr., 1016, 1017.] This action of assumpsit, while maintainable at law, is of an equitable character, liberal in form, and greatly favored by the courts as a remedy.

The act of 1897 (section 1764, Revised Statutes 1899), having been adjudged unconstitutional by this court, it is clear that the plaintiff was entitled, instead of the salary prescribed by the Act of 1897, to the fees earned by himself and his deputies in the administration of his office as probate judge of the city of St. Louis. Up to this point there is no controversy, and the city, recognizing the attitude in which it had been placed by the Act of 1897 and the subsequent decision of this court, immediately upon the remanding of the cause tendered to and paid over to the plaintiff $49,013.65 of the fees so paid to it by Koenig as clerk under the Act of 1897, but retained $42,499.68, amount in dispute in this action, on the ground that in equity and good conscience it had paid out this amount to the various deputies of the plaintiff to the use and for the benefit of the

plaintiff and in good faith believing the Act of 1897 was a valid and constitutional enactment, and whether the defendant shall be compelled to pay this amount a second time to the plaintiff after having paid it to the clerks in his office who had rendered the services which formed the basis of these fees is the vital and sole question in this case.  On the part of the plaintiff it is urged that, as the Act of 1897 was unconstitutional and was so adjudged by this court in Henderson v. Koenig, 168 Mo. 356, that act cannot be invoked in any manner by the defendant city as a justification for not paying over to the plaintiff the whole of the $91,513.33 and in retaining the $42,499.68 which it paid out as salaries to the clerks, deputies and assistants of the plaintiff in good faith and believing that said act was valid.

We are cited by the learned counsel for the plaintiff to the numerous decisions of the highest courts to the effect that a statute void for unconstitutionality is as if it had never been, and that rights cannot be built up under it, and that it is no protection to anyone who is acting under it.  [Cooley on Constitutional Limitations (7 Ed.), p. 259, and cases cited.]

That this is the logical deduction from the holding of an act of the Legislature unconstitutional must be conceded and so it has been held by this court, particularly when the citizen has invoked the unconstitutionality of an act to protect himself against a criminal charge and punishment thereunder.  [Ex parte Smith, 135 Mo. 223; In re Flukes, 157 Mo. 125; Ex parte Neet, 157 Mo. 527; Ex parte Lucas, 160 Mo. 249, et seq.]

But conceding that the Act of 1897 must be held as so utterly void that it was as if it had never been passed, what then was the relation of the plaintiff and Koenig, the clerk and all the other deputies in the office of the probate court when plaintiff was inducted into office on January 1, 1899?

The act providing for the election of the clerk as a separate officer was as unconstitutional and void as

that which undertook to deprive plaintiff of the fees
and required him to accept a salary, and hence Koenig
and all his deputies were holding their positions and
performing their respective duties solely by the suffer-
ance of the plaintiff, because he as judge of the probate
court, under section 3400, Revised Statutes 1889 (now
sec. 1756, R. S. 1899), alone had the power to designate
and appoint a clerk of said court, and by section 3407,.
Revised Statutes 1889, was entitled to receive the fees
of the office. The law devolved upon him the performance
of the duties of the office and the corresponding obliga-
tion of remunerating the deputies and assistants whom
he might call to' his aid in the discharge of those obli-
gations.   When he took charge of the office he found
himself in a somewhat trying position.   He assumed
and asserted that the law which deprived him of the
fees of the office and provided him in lieu thereof a
salary was void because unconstitutional and that he
was entitled to all the fees.   The necessary consequence
of this claim was that he alone had the power to appoint
all deputies and assistants and must compensate them
for their services.

    So numerous and important were the duties of
the office that it was clearly a physical impossibility
that he, unaided, could do clerical and office work, and
make a record of his judicial acts.   In this situation he
was confronted with the obligation which the law, as
well as common fairness and honesty, devolves upon
every man who permits another to render valuable ser-
vices to him by his consent and which he accepts.   Hold-
ing as he did that the Act of 1897 was unconstitutional.
and as this court at his instance so held, there was but
one alternative left and that was that if he without ad-
vising them to the contrary accepted their services and
they with his knowledge and approval continued to ren-
der him these services, the law implied an agreement on
his part to compensate them for the reasonable value
thereof and proof that the services were thus rendered

and accepted by him with the full knowledge that these deputies were not rendering the same as a gratuity but in the expectation of reward would have made out their case for work and labor done at his request, if they had not been paid therefor. [Sprague v. Sea, 152 Mo. 332.]

Claiming the benefits of their services and without which he could not have administered his office for a week, he could not and cannot be heard in a court of justice to ignore the corresponding obligation to remunerate the clerks and deputies who performed them and thus enable him to make his claim therefor. Under these conditions what did the plaintiff do? He brought his suit to have the Act of 1897 adjudged unconstitutional, but says himself that he did not notify a single clerk, deputy or assistant that he had no right to act as such, nor did he make a single effort to oust them from their places; on the contrary, he treated them one and all just as if they had been appointed by himself, ratified all their acts as clerks, and when a change or vacancy occurred and a new appointment was necessary he affirmatively approved the same by a formal order on his records, notably in the case of August Carle, Henry F. Bohn, J. B. DeGarno and Matthew Tenman. No less significant was his conduct in regard to the other clerks and deputies. Day by day he publicly recognized Koenig as the lawful clerk of the court by passing to him the various papers with his indorsement thereon to make the minutes of the files in ink and pass them to the entry clerk, Gutting, who kept the full record, and when Gutting had spread his orders at large on the record, he signed the same as judge, thus in the most solemn manner approving and adopting the acts of these deputies whose work is the source of all these fees for which he now sues and who according to the position he assumes in this case could not have lawfully done a single one of those acts other than by his own appointment. And when the Act of 1897 was declared unconstitutional by this court he continued all these clerks, deputies and as-

sistants in their positions with the exception of one whom he discharged. In a word, the plaintiff has appropriated to himself the fees earned by these clerks and deputies and without their labor there would be no fees over which to litigate. Will a court, in an action which is predicated upon his right in equity and good conscience to exact an accounting to him by the city, permit him thus to reap all the benefits and rewards resulting from the labors of these men and relieve him of all the burdens and the reasonable compensation for work and labor done for him, or what is tantamount to it, compel the city to repay him the amount which it, in good faith and in the belief that the act under which it acted was a valid law, paid these clerks? When the appeal in Henderson v. Koenig and the City of St. Louis, 168 Mo. 356, in the injunction case, was before this court, the constitutionality of the Act of 1897 was the only point at issue, and the decision affected nothing else. None of the questions presented on this appeal were before the court and in the nature of things could not have been, because the facts out of which this controversy has arisen had not transpired. When those acts of the Legislature, and as a necessary consequence the ordinance of the city passed in pursuance thereof, were adjudged unconstitutional, the rights of the parties were determinable by the law as it existed prior to the passage of those acts, except in so far as they were affected by the conduct and acts of plaintiff during the pendency of plaintiff's appeal in the original suit. Notwithstanding those laws were unconstitutional, it was entirely competent for the plaintiff to waive his rights to the fees of the clerk and his deputies and consent to their remuneration. This doctrine is announced by Judge Cooley in his Constitutional Limitations (7 Ed.), page 250, as follows: "There are cases where a law in its application to a particular case must be sustained, because the party who makes the objection has, by prior action, precluded himself from being heard against it.

Where a constitutional provision is designed for the protection solely of the property rights of the citizen, it is competent for him to waive the protection, and to consent to such action as would be invalid if taken against his will.'' Numerous instances are cited in which the courts have announced this rule. While the plaintiff was constantly asserting his right to the fees of the office, the evidence on behalf of the defendant tended to show that it was the understanding of the clerk that he had no purpose of contesting so much of the act as provided compensation for his clerks and assistants, and, as already said, his conduct in accepting the service of these clerks, deputies and assistants clearly indicated that he waived any intention of contesting their rights to their salaries or the city's right to pay.

This court, in Merrill v. St. Louis, 83 Mo. l. c. 251, quoted Judge Cooley's text and approved it on the ground that the parties plaintiff and defendant were alone interested and such is the case before us as it now stands. The plaintiff and the city of St. Louis alone are interested in this issue which involves alone the property right of plaintiff to recover the amount of the fees paid out by the city to these clerks and deputies. A waiver occurs, when ''one in possession of any right, whether conferred by law or by contract, and with full information of the material facts, does or forbears the doing of some things inconsistent with the existence of the right or of his intention to rely upon it; thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it afterwards.'' [Williams v. Railroad, 153 Mo. 487, l. c. 519; Bishop, Contracts (1887), sec. 792.]

As said by the St. Louis Court of Appeals in Stiepel v. Life Ass'n, 55 Mo. App. l. c. 233, ''waiver depends solely upon the intention of the party against whom it is invoked, and is in that respect different from estoppel.'' The Kansas City Court of Appeals, in Mich.

Sav. & Loan Assn. v. Trust Co., 73 Mo. App. 1. c. 166, adopts the foregoing statement of Judge ROMBAUER, and adds: "It is not meant by this, however, that one's *secret* understanding is to control, for a party's intent *will be construed from his acts* or what he *may do* or write." And this court, in Allen's Admrx. v. Richmond College, 41 Mo. 1. c. 308, said: "It is not necessary in all cases for the plaintiff to prove an express assent to enable the jury to find a previous request . . . . . And sometimes the jury will be warranted [as in this case, the court] in inferring a previous request, *even contrary to the actual fact*, on the ground of legal obligation alone."

We have no hesitancy in holding that if this were an action by the clerk and his deputies for the reasonable value of their services, rendered in the circumstances of this case, they could recover of plaintiff the value of their services notwithstanding the Act of 1897 was void and they thought it was valid when rendering the services.

But, says the plaintiff, granting all this, this counterclaim is not asserted by the clerks, but by the city, and no one can be made the debtor of another without his order or consent. This, too, is a correct statement of the law in a proper case. But in its application to the facts of this case, can it be said the payment by the city to the clerks with the knowledge of the plaintiff was without his consent? We have already adverted to the fact that the testimony discloses that the clerk understood from plaintiff that it was not his intention to challenge the act which provided for the compensation of the clerks. The evidence of the plaintiff in our opinion confirms the testimony of Koenig and Gutting as to his recognition of the right of the clerks to perform the services for which he claims the fees and his acquiescence therein. He says: "They wrote up the records and I signed them, but as far as consenting or recognizing their rights to usurp the offices that belonged to

me, *I did nothing* . . . . I appreciated the fact that
I had no power to remove them or to get them out, and
I was informed by Koenig, and of course I knew as a
matter of fact, that as soon as the payments quit, in
other words, when the clerks did not get paid, they
would get out.'' While he says he did not recognize
their right to the offices belonging to him, as a matter
of law, his recognition of the legality of every act per-
formed by them, his appropriation of the fees earned
by them, his approval of record of the records they
wrote, and his actual approval of the appointments of
several of them, must be held to be a complete recogni-
tion of their right to hold their several positions. He
cannot after availing himself of the fruits of their labor
performed daily in his presence and under his eyes be
heard to say he did not waive his right to formally ap-
point them, nor can he in a court of justice be heard to
say he is not liable for their compensation. He knew
the city was paying them, and therefore he refrained
from announcing to them that they were usurpers, be-
cause he knew the moment they quit work the office
would earn no fees, and hence he concluded he would
and did remain silent. A court of conscience to which
he appeals by the very form of his action will not toler-
ate his plea of silence in these circumstances. The law
implies from these facts an obligation on his part to re-
munerate them.

In the language of this court in St. Louis v. David-
son, 102 Mo. l. c. 154, he cannot ''grasp the benefits of
their labor with one eager hand while thrusting aside
its burdens with the other.'' Nor can he maintain that
these payments, so far as the remuneration of the clerks
was concerned, were without his knowledge or consent.
The law and justice alike required something more than
a mere passive policy. Recognizing as he did the legal-
ity of the services rendered by these clerks and depu-
ties, and holding them out to the public as rightful offi-
cers though holding under an unconstitutional act, he

cannot appropriate their services and repudiate the authority of the city to pay them. He must be held to have waived the unconstitutionality of the act and ordinance as a whole so far as the clerks were concerned. This conclusion seems so palpably just and equitable that we have no disposition to interpose barren technical rules which are salutary in proper cases, to work out a contrary and unjust conclusion.

Keeping constantly in view that the very foundation of plaintiff's claim to these fees is that he is entitled to them *aequo et bono,* we are prepared to say that in equity and good conscience he must be required to do equity and allow the salaries which the city paid out for the performance of the services upon which alone his claim for fees rests. There is nothing tortious in the conduct of the city or the clerks; they, at most, simply made the mistake of thinking it was their duty to obey a statute passed with all the formalities of the Constitution. They seem to have rendered these services to the entire satisfaction of plaintiff, as he has approved them and demands the fees therefor. It is not pretended that he has in any manner rewarded them out of his own pocket. While this court holds and the city confesses he is entitled to his fees, equity and good conscience and the law requires that in this accounting the reasonable expense of earning them shall be deducted. The conduct of the clerk and city seems to have been prompted by entire good faith. They have scrupulously accounted for every dollar that came to their hands. They did not obtrude themselves into plaintiff's affairs without a color of right, and it would be a harsh conclusion to say that the city must lose $42,000 from which it has derived no benefit and which it in obedience to a public statute paid out to the clerks and assistants who earned these fees in the utmost good faith. The decision of the Supreme Court of Illinois in Mayfield v. Moore, 53 Ill. 428, 433, commends itself to us. The court said: "The appellee (contestee) has intruded into

appellant's office without right, and has received the profits of the office, and, like the person entering into the land of another with a defective title, he must answer for the profits.   Inasmuch, however, as appellee obtained the certificate of election, and a commission was issued to him, he was acting in apparent right, and, so far as this record discloses, he resorted to no fraudulent or improper means to produce that result; he does not occupy the position he would had he resorted to such a course.   He should only be required to account for the fees and emoluments of the office received by him, after deducting reasonable expenses in earning them.   This being an equitable action, it should be governed, in this respect, by the same rules that would obtain had this been a bill for an account, instead of an action for money had and received.   He should have only a reasonable allowance for the necessary expense in earning the fees and emoluments.   Had he intruded without pretense of right, then a different rule would, no doubt, have been applied."

The right of an officer *de jure,* who has been deprived of his office by a *de facto* incumbent, to sue the latter for the salary or fees he has received as such, is now settled law in this State.   If the compensation fixed by law is a salary the authorities seem to hold that the officer *de jure* is entitled to recover the whole without abatement, but where the officer's remuneration consists of fees earned for services rendered the public or individuals it is held that the measure of damages is the amount of the fees less the necessary expense in earning them where he has held the office under a color of right.   [Mayfield v. Moore, 53 Ill. 428; Bier v. Gorrell, 30 W. Va. 95; 2 Sedgwick on Damages, sec. 569.] But where he has intruded without pretense of legal right, then a different rule will apply.   If an officer de *facto* can recover or be allowed the necessary expenses of earning fees during his incumbency in derogation of the rightful officer, *a fortiori,* it appears to us, can the

city in this case justly claim the amounts paid out by it in perfect good faith to the deputies and assistants, which we have held the plaintiff recognized *as his own* in the earning of the fees which are the bone of contention in this case. The evidence greatly preponderates in establishing that the amounts paid and for which the counterclaim is made were entirely reasonable, and such as were allowed by the plaintiff after all controversy as to his right to receive the fees was settled by this court. The plaintiff admitted when testifying that the work of his office would have stopped and necessarily no fees would have been earned if he had not permitted the clerks and assistants to have retained their places and do the services for which the fees were paid. In permitting them to do so without protest and in openly accepting and appropriating their labor, he must be held to have impliedly at least agreed that they should be paid therefor, whatever mental reservation he may have entertained at the time, and *pro tanto,* he waived the constitutionality of the act which authorized the city to pay them. By electing to waive the tort and suing in assumpsit, the plaintiff has ratified the act of the city in receiving and holding these fees for him, and in the accounting he is chargeable with the fees paid out to the clerks for their services in earning them. Appealing as plaintiff does to the principle of *ex aequo et bono,* he cannot complain if the same principle is invoked against him.

We think the circuit court correctly ruled that while he was entitled to the fees, he was chargeable with the necessary salaries paid out by the city to his clerks and assistants, who earned them for him, and the judgment of the circuit court is accordingly affirmed.

*Brace, C. J., Burgess, Valliant* and *Fox, JJ.,* concur *in toto; Marshall, J.,* concurs in result; *Lamm, J.,* not having been a member of the court when case was heard, takes no part in the decision; *Valliant, J.,* does

not desire to be understood as agreeing that the Act of 1897 is unconstitutional.